Michael J. Wise, Bar No. 143501
MWise@perkinscoie.com
Joseph P. Hamilton, Bar No. 211544
JHamilton@perkinscoie.com
Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
Michael J. Song, Bar No. 243675
MSong@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Attorneys for Plaintiffs and Counter-Defendants
FONTEM VENTURES B.V. and
FONTEM HOLDINGS 1 B.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; and FONTEM HOLDINGS 1 B.V., a Netherlands company,<br><br>Plaintiffs,<br><br>v.<br><br>NJOY, INC., a Delaware corporation, and DOES 1-5, Inclusive,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV14-1645 GW (MRWx) and related cases<br><br>Case No. CV14-1649 GW (MRWx)<br>Case No. CV14-1650 GW (MRWx)<br>Case No. CV14-1651 GW (MRWx)<br>Case No. CV14-1652 GW (MRWx)<br>Case No. CV14-1653 GW (MRWx)<br>Case No. CV14-1654 GW (MRWx)<br>Case No. CV14-1655 GW (MRWx)<br><br>**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Honorable George Wu<br><br>Date:  December 15, 2014<br>Time: 8:30 a.m.<br>Place: 312 North Spring Street<br>         Los Angeles, CA 90012<br>         Courtroom 10 |

| | | |
|---|---|---|
| 1 | FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1649 GW (MRWx) |
| 2 | | |
| 3 | Plaintiffs, | |
| 4 | v. | |
| 5 | CB DISTRIBUTORS, INC., an Illinois corporation; DR DISTRIBUTORS, LLC, *etc. et al.*, | |
| 6 | Defendants. | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1650 GW (MRWx) |
| 11 | | |
| 12 | Plaintiffs, | |
| 13 | v. | |
| 14 | VAPOR CORP., a Delaware corporation, *etc.*, | |
| 15 | Defendant. | |
| 16 | AND RELATED COUNTERCLAIMS | |
| 17 | | |
| 18 | FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1651 GW (MRWx) |
| 19 | | |
| 20 | Plaintiffs, | |
| 21 | v. | |
| 22 | FIN BRANDING GROUP, LLC, an Illinois limited liability company; VICTORY ELECTRONIC CIGARETTES CORPORATION, *etc. et al.*, | |
| 23 | | |
| 24 | Defendants. | |
| 25 | | |
| 26 | AND RELATED COUNTERCLAIMS | |
| 27 | | |
| 28 | | |

Plaintiffs' Opening Claim Construction Brief

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1652 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| BALLANTYNE BRANDS, LLC, *etc.*, | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1653 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| SPARK INDUSTRIES, LLC, *etc.*, | |
| Defendant. | |

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1654 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| LOGIC TECHNOLOGY DEVELOPMENT LLC, *etc.*, | |
| Defendant. | |

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1655 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| VMR PRODUCTS, LLC, dba V2CIGS, *etc.*, | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ....................................................................................... 1

    A.    THE PATENTS-IN-SUIT ................................................................ 1

    B.    THE LEVEL OF ONE OF ORDINARY SKILL IN THE ART ......... 2

III.  DISCUSSION ........................................................................................... 3

    A.    THE LAW OF CLAIM CONSTRUCTION.................................... 3

    B.    PROPOSED CONSTRUCTIONS .................................................. 4

        1.    "cavity" .............................................................................. 4

        2.    "frame"................................................................................ 6

        3.    "housing" ............................................................................ 9

        4.    "integrally formed"............................................................ 11

        5.    "inlet" ............................................................................... 13

        6.    "a mouthpiece on the housing".......................................... 14

        7.    "a liquid conduction component in contact with the liquid permeating component and the liquid storage component" ..... 16

        8.    "a liquid permeating component sleeved on the electric heater" ............................................................................. 17

        9.    "liquid storage component;" "liquid supply;" "solution storage area" .................................................................... 19

        10.   "projecting into;" "extending into" .................................... 22

        11.   "substantially"................................................................... 23

IV.   CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                                         **Page**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
    707 F.3d 1318 (Fed. Cir. 2013) ................................................................. 10

*Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.*,
    206 F.3d 1440 (Fed. Cir. 2000) ................................................................. 21

*GE Lighting Solutions, LLC v. Agilight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014) ........................................................ 3, 5, 15

*Liquid Dynamics Corp. v. Vaughan Co.*,
    355 F.3d 1361 (Fed. Cir. 2004) ................................................................. 24

*LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc.*,
    275 F.3d 1347 (Fed. Cir. 2001) ................................................................. 24

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir.1995) (en banc), *aff'd, Markman*, 517 U.S. 370
    (1996) .......................................................................................................... 3

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................... 1, 2, 3

*Playtex Products, Inc. v. Procter & Gamble Co.*,
    400 F.3d 901 (Fed. Cir. 2005) ................................................................... 24

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ................................................................... 3

*Sandisk Corporation v. Kingston Technology Co.*,
    695 F.3d 1348 (Fed. Cir. 2012) ........................................................... 11, 13

*Thorner v. Sony Computer Entertainment America LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ......................................................... 3, 23, 24

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
    442 F.3d 1322 (Fed. Cir. 2006) ................................................................. 24

# I.   INTRODUCTION

The proposed terms for construction are simple and easily understood by a lay judge or jury.  The terms either need no construction or should be construed according to their plain meaning.  Defendants' constructions ignore the plain meaning of the claim terms, and instead import limitations from the preferred embodiments despite the Federal Circuit's repeated warnings against doing so.[1]  Defendants' constructions limiting the claims to the preferred embodiments should be rejected.

# II.   BACKGROUND

## A.   THE PATENTS-IN-SUIT

The patents-in-suit[2] are directed to electronic cigarettes.[3]  Electronic cigarettes simulate the experience of smoking by providing a vapor containing nicotine or a flavoring through a device resembling a traditional smoking article, but without burning or igniting the material to be inhaled.[4]

The general operation of an electronic cigarette will be described with reference to the embodiment shown in Figure 1 of the '628 Patent, below.  To simulate the experience of smoking, the electronic cigarette has a shell (14) generally shaped like a traditional



---

[1]      *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc).

[2]      Pursuant to the Court's order, annotated copies of the patents-in-suit, U.S. Patent Nos. 8,365,742 ("the '742 patent"); 8,375,957 ("the '957 patent"); 8,393,331 ("the '331 patent"); 8,490,628 ("the '628 patent"); and 8,689,805 ("the '805 patent") are attached as Exs. 1–5 to the Dueppen Decl. filed herewith.  All references to Exhibit numbers refer the Dueppen Decl. exhibits.

[3]      *See, e.g.*, '628 Patent, 1:18 (Ex. 4).

[4]      *See, e.g.*, '628 Patent, 1:39–41 (Ex. 4).

cigarette.  The electronic cigarette also has an electronic mechanism called an atomizer to create vapor for the user to inhale.  In Figure 1, a nicotine or other liquid solution is stored in a liquid-supplying bottle (11).  That solution is transported to an atomizer (9) which converts the liquid into a vapor.  The atomizer (9) includes a heating element (not shown) powered by a cell (2), *e.g.*, a battery.  Air enters the electronic cigarette at an inlet (4) when a user sucks or inhales at a mouthpiece (15).  A sensor (6) sends a signal to an electronic circuit board (3) to turn on a heating element in the atomizer (9).  The liquid or an air liquid mixture is vaporized by the heating element and inhaled through the mouthpiece (15).[5]

For background, Fontem provides samples of various electronic cigarettes accused of infringement in this matter.[6]

## B.     THE LEVEL OF ONE OF ORDINARY SKILL IN THE ART

Claims must be construed from the perspective of one of ordinary skill in the art at the time of the invention.[7]  Here, one of ordinary skill in the art has a mechanical or electrical engineering degree, industrial design degree, or a similar technical degree, or equivalent work experience, and 5–10 years of working in the area of electromechanical devices, including medical devices.

The patents-in-suit have different filing dates, the earliest being the filing date of the Chinese priority application for the '331 and '628 patents on April 14, 2004, and the most recent being the filing date of the Chinese priority application for the '805 patent on February 11, 2009.  The level of one of ordinary skill is the same throughout those filing dates.

---

[5]     '628 Patent, 2:31–45; 3:29–34 (Ex. 4).
[6]     Exs. 20-24.
[7]     *Phillips*, 415 F.3d at 1313 (Fed. Cir. 2005).

# III.   DISCUSSION

## A.   THE LAW OF CLAIM CONSTRUCTION

The starting and ending point for claim construction is the claims.[8]  The claims are generally given their plain meaning, which is the ordinary and customary meaning "to a person of ordinary skill in the art . . . at the time of the invention."[9]  The claims "must be read in view of the specification, of which they are a part."[10]  The court "should also consider the patent's prosecution history. . . ."[11]

The specification and prosecution history only compel departure from the plain meaning of a claim term: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term in the specification or during prosecution."[12]  Accordingly, the Federal Circuit "has repeatedly warned against confining the claims to [disclosed] embodiments."[13]

The court is permitted to rely on extrinsic evidence, including dictionaries and learned treatises to determine a claim term's plain meaning.[14]  But, that extrinsic evidence is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'"[15]

---

[8]  *Phillips*, 415 F.3d at 1313; *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[t]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").

[9]  *Phillips*, 415 F.3d at 1312–13.

[10]  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir.1995) (en banc), *aff'd*, *Markman*, 517 U.S. 370 (1996).

[11]  *Markman v. Westview Instruments, Inc.*, 52 F.3d at 980.

[12]  *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

[13]  *Phillips*, 415 F.3d at 1323.  *See also GE Lighting Solutions, LLC v. Agilight, Inc.*, 750 F.3d 1304, 1311 (Fed. Cir. 2014).

[14]  *Phillips*, 415 F.3d at 1317.

[15]  *Phillips*, 415 F.3d at 1317.

Plaintiffs' Opening Claim Construction Brief

**B.    PROPOSED CONSTRUCTIONS**

   **1.    "cavity"**

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary or, alternatively, a hollow space | a hollow space within and completely surrounded by the body of the atomizer |
| **Claims in which term appears**[16]: '331 patent claims 1–2; '628 patent claim 3 | |

Claims 1 and 2 of the '331 patent recite, in part:

>    1. An electronic cigarette comprising:
>    a housing;
>                 * * *
>    an atomizer within the housing;
>                 ***
>    a *cavity* arranged in the atomizer;
>                 * * *
>    a heating element within the *cavity*.
>
>    2. An electronic cigarette, comprising:
>    a housing;
>                 * * *
>    an atomizer within the housing, with the atomizer having a
>    heating element within a *cavity*. . . .

Similarly, claim 3 of the '628 Patent recites: "[t]he electronic cigarette of claim 1 further including an atomization *cavity* within the atomizer."

The term "cavity" requires no construction.  "Cavity" is not a term of art. The plain meaning of "cavity" is easily understood and can be applied by a reasonable juror having no special knowledge of the technology at issue.  In the alternative, Fontem proposes that "cavity" be construed to have its plain meaning, "a hollow space."  The parties agree that "cavity" at least means "a hollow space." Defendants' proposed construction, however, imports additional limitations. According to Defendants, the term "cavity" imposes both a specific location and structure, namely, that the claimed "cavity" is *within and completely surrounded by the body of the atomizer*."

The plain meaning of "cavity" does not require a "cavity" in a specific

---

   [16]    Dependent claims that depend from the claims in which the terms are recited are not identified.

location or structure.  The only restriction to the location of the cavity is found expressly in the claims.  For example, claim 3 of the '628 patent recites that the cavity is "within the atomizer."  Defendants rewrite the plain language "within the atomizer" to read "within *and completely surrounded by the body of* the atomizer" under the guise of construing "cavity."  Similarly, claims 1 and 2 of the '331 patent do not require that the cavity be "within and completely surrounded by the body of the atomizer."  Instead those claims simply recite that the cavity is "arranged in the atomizer," or "the atomizer having . . . a cavity."

Moreover, claims 1 and 2 of the '331 patent do not require an atomizer having a body, let alone that the "cavity" be "completely surrounded by the body of the atomizer."  For example, claim 1 requires "an atomizer," "a cavity arranged in the atomizer," and "a heating element within the cavity."  The claim does not require a "body of the atomizer."  Similarly, claim 3 of the '628 patent requires "an atomizer . . . including:" "a porous body," "a heating wire," and a "cavity within the atomizer."  The claim does not require that the cavity be within the porous body, only that it is "within the atomizer."

Because the claim language does not require that the cavity be within a porous body, Defendants' construction improperly imports features of one embodiment.  The '331 and '628 patent specifications disclose an embodiment where "the atomization cavity wall is surrounded by the porous body 27" as shown in Figure 6 of the '331 and '628 patents.[17]  But, as the Federal Circuit held in *GE Lighting Solutions, LLC v. Agilight, Inc.*, "[a] patent that discloses only one embodiment is not necessarily limited to that embodiment."[18]  In *GE*, the Federal Circuit reversed the district court's claim construction because "the specification and prosecution history only compel departure from the plain meaning" of a claim

---

[17]     '331 patent, 2:63–64 (Ex. 3); '628 patent, 2:61–62 (Ex. 4).  Note the '331 and '628 patents share a common disclosure.
[18]     750 F.3d. 1304, 1309 (Fed. Cir. 2014).

1    term where a patentee "clearly set[s] forth a definition" or "clearly express[es] an

2    intent to define the term" or where "the specification [or prosecution history]

3    make[] clear that the invention does not include a particular feature."[19]  Just like in

4    *GE*, there is nothing in the '331 or '628 patents or file histories requiring departure

5    from the plain meaning of "cavity."

6        Accordingly, the Court should reject the Defendants' proposed construction

7    and instead, not construe the term or adopt Fontem's construction.

8        **Significance of construction**:  Defendants may argue that under their

9    construction at least some of the accused products do not infringe.  But, except for

10   inlets or outlets for fluid to enter or exit the cavity, in most if not all of the accused

11   products, there is a cavity that is "within and completely surrounded by [a] body of

12   [an] atomizer."[20]

13       **2.     "frame"**

| Fontem's Construction | Defendants' Construction |
| --- | --- |
| no construction necessary or, alternatively, a support | an underlying, rigid structure on which the porous component is set |

**Claims in which term appears**: '742 patent claims 1–3

16   Claims 1-3 of the '742 patent recite, in part:

18       1.     An aerosol electronic cigarette, comprising:
         . . . an atomizer assembly . . .;
                    * * *

19   the atomizer assembly is an atomizer, which includes a porous
20   component and a heating body;
                    * * *

21   the atomizer includes a *frame*;
     the porous component is supported by the *frame*;
                    * * *

23   the *frame* has a run-through hole.

24       2.     An electronic cigarette, comprising:
                    * * *

25   the atomizer assembly including a porous component supported

---

27   [19]   *GE Lighting Solns,* 750 F.3d. at 1309–10 (citations omitted).
28   [20]   *See, e.g.*, Plaintiffs' Infringement Contentions re NJOY King
     Disposable Electronic Cigarette (Ex. 6, lower panel).

by a *frame* having a run-through hole. . . .

3.    An electronic cigarette, comprising:
* * *
the atomizer assembly includes a frame having a run through hole, and a porous component between the *frame* and the outlet. . . .

The term "frame" needs no construction.  "Frame" is easily understood and can be applied by a jury without specialized technical knowledge.  In the alternative, Fontem proposes that "frame" be construed to have its plain meaning, namely, "a support."  In contrast, Defendants argue that "frame" imposes both a specific structure, "an underlying rigid structure," and a specific configuration, that the porous component be set on that structure.  Neither additional limitation is found in the plain language of the claims or required by the '742 patent specification or file history.

First, the claim language confirms that "frame" means "a support."  For example, the '742 Patent claims 1 and 2 expressly recite that the "porous component [is] *supported* by the *frame*."[21]  Claims 1 and 2 impose no limitation with respect to how "rigid" the frame is or whether or not the porous component is "set" on the frame.  All that claims 1 and 2 require is that the "frame" support the "porous component."

And, while claims 1 and 2 require that the "porous component is supported by the frame," claim 3 only requires that the "porous component [be] between the frame and the outlet."[22]  To construe the term "frame" to require that the porous component be set on the frame when claim 3 does not even require that the frame support the porous component rewrites the claim to include limitations not found in the plain claim language.

---

[21]    '742 patent, claims 1, 2 (emphasis added) (Ex. 1).
[22]    '742 patent, claim 3 (emphasis added) (Ex. 1).

1    Because the claim language does not require a rigid frame or that the porous

2    component be set on the frame, Defendants' construction improperly imports

3    features of one embodiment.  The '742 patent specification discloses an

4    embodiment where "the porous component (82) [is] set on the frame (81)" as

5    shown in Figures 17 and 18 of the '742 Patent.[23]  But, the '742 patent makes clear

6    that this is simply an embodiment, which is insufficient to limit the claims to that

7    embodiment.[24]  There is nothing in the '742 patent or file history requiring

8    departure from the plain meaning of "frame."

9    Further, the portion of Defendants' construction limiting "frame" to "an

10   underlying rigid structure" is not supported by any embodiment in the '742 patent

11   and introduces unnecessary ambiguity.  The '742 patent specification discloses that

12   "the frame (82) has a run through hole,"[25] but is silent with respect to the frame's

13   rigidity.  Under Defendants' construction, how rigid does the frame have to be?

14   Defendants' construction simply adds confusion and extra issues for the jury to

15   consider that are not found in the claims or the '742 patent specification.

16   Accordingly, the Court should reject the Defendants' proposed construction and

17   instead, not construe the term or adopt Fontem's construction.

18   **Significance of construction**: Defendants may argue that the accused

19   "frame" in some of the accused products does not meet the claim limitation

20   because, even though a porous component is supported by the accused frame, that

21   porous component may not be directly set on a rigid frame.  But even under

22   Defendants' improper construction, a reasonable juror may find that the accused

23   products infringe because the accused porous component may be indirectly set on

24

25

26

---

27    [23]   '742 patent, 5:42–45; Figs. 17, 18 (Ex. 1).

28    [24]   *GE Lighting Solns,* 750 F.3d at 1309–10.

       [25]   '742 patent at 5:44–46 (Ex. 1).

the frame, and the frame is sufficiently rigid to support that porous component.[26]

### 3.   "housing"

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary or, alternatively, a casing | a one-piece shell |
| **Claims in which term appears**: '331 patent claims 1–2; '628 patent claims 1, 2, 4, 7, 8; '742 patent claims 2–3; '957 patent claims 1, 2, 5, 10, 23; '805 patent claims 1, 6 | |

Most independent claims in each of the patents-in-suit include the term housing.  For example, claim 1 of the '331 patent recites, in part:

> 1.   An electronic cigarette comprising;
> a *housing*;
> a mouth piece on the *housing*;
> an LED at a first end of the *housing*;
> an air inlet leading into the *housing*;
> a battery within the *housing*;
> an electronic circuit board within the *housing*;
> a sensor within the *housing*. . . .

The term "housing" needs no construction.  "Housing" is easily understood and can be applied by a jury without specialized technical knowledge.  In the alternative, Fontem proposes that "housing" be construed to have its plain meaning, namely, "a casing."  In contrast, Defendants assert that the term "housing" means "a one-piece shell."  Fontem believes there is no substantive difference between "shell" and "casing" in the proposed constructions.  The only substantive dispute here is whether or not "housing" should be limited to a "one-piece" housing.

But the claims, the specifications, and the file histories of the patents-in-suit do not support importing the limitation of "one-piece" into the claim term "housing."  The specifications make clear that the term "housing" includes multi-piece housings.  For example, the '805 patent expressly states that "the housing comprises a first housing 8 and a second housing 8′."[27]  The '805 patent also

---

[26]   *See, e.g.*, Plaintiffs' Infringement Contentions re LOGIC Disposable Electronic Cigarette (Ex. 7, top panel).

[27]   '805 patent, 2:5–6; 3:30–31 (Ex. 5).

describes that "the power supply unit 1 and the sensor 2 . . . are located in the first housing 8.  The atomizing core component and the liquid storage component 3 are located in the second housing 8′."[28]  That embodiment is precisely what is claimed in the '805 patent claim 1, which recites "1.  An electronic cigarette, comprising: a housing . . .; a battery and a liquid storage component within the housing; an atomizing core within the housing. . . ."[29]  To limit the housing to "one-piece" would exclude the embodiments in the '805 patent.  But, as the Federal Circuit reiterated in *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct."[30]

Similarly, the '742 patent discloses that "the battery assembly and atomizer assembly are mutually connected and then installed inside the integrally formed shell (a) to form a one-piece part."[31]  The '742 patent further discloses that "a perforated component for liquid storage (9) inside the shell (b)."[32]  As shown in Figures 1 and 2 of the '742 patent, shells (a) and (b) are separate pieces.  Yet, claims 2 and 3 both require "a battery assembly and an atomizer assembly within a housing" and "a liquid storage component in the housing."  To limit the housing to "one-piece" would improperly exclude that embodiment in the '742 patent.[33]

"Housing" does not imply, one way or another, whether the "housing" is made of one-piece or multiple pieces, and the claim should not be so limited.  Webster's defines "housing" as "something that covers and protects: as a case or

---

[28]    '805 patent, 2:6–8; 3:31–34 (Ex. 5).
[29]    '805 patent, claim 1 (Ex. 5).
[30]    *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) (internal quotations omitted).
[31]    '742 patent, 3:42–44 (Ex. 1).
[32]    '742 patent, 3:50–51 (Ex. 1).
[33]    *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d at 1326.

enclosure (as for a mechanical part or instrument)."[34]  The plain meaning of "housing" is not limited to "one-piece" housings.  Accordingly, the Court should reject the Defendants' proposed construction and instead, not construe the term or adopt Fontem's construction.

**Significance of construction**: Defendants may assert that accused devices having multiple-piece housings do not infringe.  But, even under Defendants construction limiting the term "housing" to "one-piece," "*a* housing" means "*one or more* housings."[35]  So the claim limitation "a housing" would be satisfied by two or more "one-piece" housings.[36]

### 4.   "integrally formed"

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary or, alternatively, formed by parts that make up a whole | made of one piece |

**Claims in which term appears**: '742 patent claim 1

Claim 1 of the '742 patent recites, in part:

> 1. An aerosol electronic cigarette, comprising:
> . . . a shell that is hollow and integrally formed. . . .

The term "integrally formed" needs no construction.  "Integrally formed" is easily understood and can be applied by a jury without specialized technical knowledge.  In the alternative, Fontem proposes that "integrally formed" be construed to have its plain meaning, namely, "formed by parts that make up a whole."  Defendants' construction limiting "integrally formed to "made of one piece" should be rejected because it is contrary to the plain meaning of the term in view of the specification of the '742 patent.

---

[34]   *Merriam-Webster's Collegiate Dictionary* 603 (11th Ed. 2003) (Ex. 8).
[35]   *See, e.g., Sandisk Corporation v. Kingston Technology Co.,* 695 F.3d 1348, 1360 (Fed. Cir. 2012).
[36]   *See, e.g.*, Plaintiffs' Infringement Contentions re 21st Century Smoke Rechargeable Electronic Cigarette (Ex. 9, bottom panel).

Webster's defines "integral" as "1 a: essential to completeness" and "c : formed as a unit with another part <a seat with ~ headrest>."[37] The '742 patent uses the term in a manner consistent with those definitions.



Figures 1 and 2, right, show a "shell (a)" and a "cigarette holder shell (b), which is often referred to as simply "shell (b)."[38] Together, shells (a) and (b) form the electronic cigarette.

The '742 patent also discloses that multiple components can be combined to form a "one-piece part." Specifically, the '742 Patent recites that "the battery assembly and atomizer assembly are mutually connected and then installed inside the integrally formed shell (a) *to form a one-piece part*."[39]

In contrast, Defendants' proposed construction, "made of one piece," improperly imports an embodiment. While it is possible for a shell to be made of one piece, the '742 patent does not require such a configuration. Accordingly, the Court should reject the Defendants' proposed construction and instead not construe the term or adopt Fontem's construction.

**Significance of construction**: Under their improper construction, Defendants may argue that claim language requiring certain components be "located in the shell"[40] is not met by devices that have the components in shells made from more than one piece. But, even under Defendants improper construction, "*a shell*" means

---

[37]   *Webster's* at 650 (Ex. 8).
[38]   '742 patent, 3:51, 3:62, 4:2; Figs. 1, 2 (Ex. 1).
[39]   '742 patent, 3:42–44 (Ex. 1).
[40]   '742 patent, claim 1 (Ex. 1).

"*one or more* shells"[41] such that the accused products still infringe this limitation because the accused components are located in one or more shells that are made of one piece.[42]

### 5.   "inlet"

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary or, alternatively, an opening for air intake | opening on the external wall of the housing for air intake |
| **Claims in which term appears**: '331 patent claims 1–2; '628 patent claims 1, 7–8; '742 patent claims 1–3 | |

Several of the independent claims in each of the patents-in-suit require an "inlet." For example, claim 1 of the '331 patent recites, in part:

> 1.     An electronic cigarette comprising;
> a housing;
>          * * *
> an air *inlet* leading into the housing. . . .

The term "inlet" needs no construction. "Inlet" is easily understood and applied by a jury without specialized technical knowledge. In the alternative, Fontem proposes that "inlet" be construed to have its plain meaning, namely, "an opening for air intake." Defendants agree that an inlet is an opening for air intake. But, Defendants also propose that "inlet" requires a specific location for the inlet, namely, "on the external wall of the housing."

The plain meaning of "inlet" does not require a specific location of the inlet and the claims have no such limitation. The claims recite, for example, "air inlet leading into the housing,"[43] "air inlet for providing air into the housing,"[44] "a housing having an inlet and outlet [and] an airflow channel in the housing connecting the inlet to the outlet," "a [shell or housing] [that] has . . . through-air-

---

[41]     *See, e.g., Sandisk Corporation*, 695 F.3d at 1360.
[42]     *See, e.g.*, Plaintiffs' Infringement Contentions re FIN Rechargeable Electronic Cigarette (3-Piece Device) (Ex. 10).
[43]     '331 patent, claim 1 (Ex. 3).
[44]     '331 patent, claim 2 (Ex. 3).

inlets,"[45] an "electronic cigarette, comprising … an inlet and an outlet,"[46] or "a housing having an inlet and an outlet."[47]  And, Webster's defines "inlet" as "a way of entering . . . an opening for intake."[48]  There is nothing in the plain meaning of "inlet" requiring a particular location for the inlet.

Defendants' construction improperly limits the claims to the specific embodiments.  But, there is no language in the claims, specifications or file histories of the patents-in-suit requiring that the location of the inlets be limited to the external wall of the housing.  Accordingly, the Court should reject the Defendants' proposed construction and instead not construe the term or adopt Fontem's construction.

**Significance of construction**: In conjunction with Defendants' improper construction limiting the term "housing" to a "one-piece shell," Defendants may assert that the inlets in some of the accused devices are not on the external wall of the housing because the inlets are at the junction of portions of the housing or between the housing and other components.[49]

**6. "a mouthpiece on the housing"**

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary or, alternatively, for the term mouthpiece, the part of an electronic cigarette that is placed at or in the user's mouth | a structure that is adapted to be gripped by the user's mouth and that is attached on the housing |
| **Claims in which term appears**: '331 patent claims 1–2 | |

Claims 1 and 2 of the '331 patent recite, in part:

> 1. An electronic cigarette comprising;
> a housing;

---

[45]  '742 patent, claims 1–3 (Ex. 1).
[46]  '628 patent, claim 1 (Ex. 4).
[47]  '628 patent, claims 7, 8 (Ex. 4).
[48]  *Webster's* at 644 (Ex. 8). *See also Oxford American Dictionary & Thesaurus* 769 (1st ed. 2003) ("way of entry") (Ex. 11).
[49]  *See, e.g.*, Plaintiffs' Infringement Contentions re NJOY King Disposable Electronic Cigarette (Ex. 12, bottom panel).

a mouth piece on the housing. . . .

The meaning of the phrase "mouthpiece on the housing" is easily understood and can be applied by a jury without specialized technical knowledge.  In the alternative, Fontem proposes that the term "mouthpiece" be accorded its plain meaning, "part of an electronic cigarette that is placed at or in the user's mouth." Defendants' proposed construction, however, imports additional limitations by requiring that the mouthpiece is "adapted to be gripped by the user's mouth," and is a separate piece "attached on the housing."

Defendants' construction appears to improperly limit the term mouthpiece to the specific embodiment shown in Fig. 11 (item 15) of the '331 patent by requiring "adapted to be gripped by the user's mouth" and "attached on the housing." Defendants construction improperly rewrites the phrase "on the" to mean "that is attached to."  While the '331 patent does include an embodiment with a detachable mouthpiece,[50] the claims include no such limitation.  And, there is no clear language in the '331 patent necessary to depart from the plain meaning of the term "mouthpiece" or to limit the claims to preferred embodiments.[51]

Moreover, in contrast to Defendants' proposed construction, one Defendant, NJOY, asserted that a mouthpiece that is part of the housing meets this claim limitation.  In a request for *Inter Partes* Review of the '331 Patent, NJOY asserted that the end of an electronic cigarette housing meets this limitation as shown in the figure, right, submitted by NJOY to the USPTO.[52]  Accordingly, the Court should reject the Defendants' construction and instead not



---

[50]   '331 patent, 3:65–4:3 (Ex. 3).

[51]   *GE*, 750 F.3d. at 1309 (citations omitted).

[52]   Petition for *Inter Partes* Review of U.S. Patent No. 8,393,331, p. 47 (Ex. 13) (annotations in original).

1  construe the term or adopt Fontem's construction.

2    **Significance of construction**: Defendants may argue that one or more of the

3  accused devices do not have a "mouthpiece on the housing" because that accused

4  mouthpiece is: (1) not shaped to be gripped by the mouth, or (2) not detachable.[53]

5    **7.   "a liquid conduction component in contact with the liquid permeating component and the liquid storage component"**

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary | a component that transports liquid from the liquid storage component to the liquid permeating component |

**Claims in which term appears**:'805 patent claim 3

9    Claim 3 of the '805 patent recites, in part:

11    3. The electronic cigarette of claim 2 further including *a liquid conduction component in contact with the liquid permeating component, and the liquid storage component*.

13    The phrase "a liquid conduction component in contact with the liquid

14  permeating component and the liquid storage component" needs no construction as

15  it is easily understood and can be applied by a jury without specialized technical

16  knowledge.  While there is no question that the "liquid conduction component"

17  must conduct, or as Defendants' construction recites, "transport" liquid, Defendants

18  also assert that the claimed physical relationship, "in contact with," imposes a

19  specific liquid flow path not found in the plain claim language, namely, "from the

20  liquid storage component to the liquid permeating component."

21    The portion of the phrase reading "in contact with" does not need to be

22  construed.  "In contact with" simply

23  indicates that the liquid conduction

24  component (item 7) is "in contact with" two

25  other components of the electronic cigarette:

26  the liquid permeating component (item 6)



[53] *See, e.g.*, Plaintiffs' Infringement Contentions re NJOY King Disposable Electronic Cigarette (Ex. 12, top panel).

1    and the liquid storage component (item 3), as shown in the specification and Fig.

2    1A, above.[54]

3         Defendants' proposed rewrite of "in contact with" to require a specific liquid

4    flow path ignores the plain claim language and improperly imports one

5    embodiment into the claims.  The '805 patent specification describes that in one

6    embodiment the "the liquid conduction component 7 is sleeved on the liquid

7    permeating component 6 . . . and is contacted with the liquid storage component.

8    As a result cigarette liquid . . . is absorbed and permeated to the liquid permeating

9    component."[55]  The '805 patent specification describes this configuration as an

10   embodiment but does not indicate in any way that the claims should be limited to

11   the flow path in this embodiment.

12        Accordingly, the Court should reject the Defendants' proposed construction

13   and instead not construe the term or adopt Fontem's construction.

14        **Significance of construction**:  The accused products would still infringe

15   under either construction because the products include "a component that transports

16   liquid from the liquid storage component to the liquid permeating component."[56]

17   Defendants may also assert that prior art discloses the claim limitation based solely

18   on fluid flow even though that prior art fails disclose components that are "in

19   contact" as the claim expressly requires.

20        **8.    "a liquid permeating component sleeved on the electric heater"**

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary or, alternatively, a liquid permeating component fitted around the electric heater | a liquid permeating component fitted around and oriented in the same axial direction as the heater |

**Claims in which term appears**: '805 patent claim 2

---

24   [54]    '805 patent at 3:14–17, Fig. 1A (Ex. 5) ("3," "6," and "7" enlarged for

26   clarification).

27   [55]    '805 patent at 3:18–24 (Ex. 5).

      [56]    *See*, *e.g.*, Plaintiffs' Infringement Contentions re NJOY King

28   Disposable Electronic Cigarette (Ex. 14).

1   Claim 2 of the '805 Patent 2 recites:

2       2. The electronic cigarette of claim 1 further including a liquid

3       permeating component sleeved on the electric heater.

4       The sole dispute for the phrase "a liquid permeating component sleeved on

5   the electric heater" is the meaning of "sleeved on." The term "sleeved on" needs no

6   construction. The plain meaning of the phrase is easily understood and can applied

7   by a jury without specialized technical knowledge. In the alternative, Fontem

8   proposes that "sleeved on" be accorded its plain meaning, "fitted around."

9   Defendants assert that "sleeved on" means both "fitted around *and oriented in the*

10   *same axial direction*."

11       Webster's defines sleeve as "2 a: a tubular part . . . designed to fit over

12   another part" and "2 b: an open ended flat or tubular

13   packaging or cover: Jacket."[57] There is nothing in the

14   plain meaning of sleeve requiring that the sleeve have an

15   axial direction, let alone that that axial direction be the

16   same as the component the sleeve is "fitted around."

17   Fontem's construction is supported by the '805 patent

18   specification. For example, Figure 1A, right, shows "a

19   liquid permeating component 6 sleeved on the electric heater 5."[58] In the

20   embodiment shown in Figure 1A , the component 6 is "fitted around" the heater 5.

21       Defendants' construction improperly imports the above embodiment into the

22   claim by defining "sleeved" as "oriented in the same axial direction." Although the

23   embodiment of Figure 1A above shows a liquid permeating component that is

24   oriented in the same axial direction as the electric heater, there is no requirement in

25   either the plain language of "sleeve" or in the '805 patent to limit "sleeved on" to

26   



27       [57]   *Webster's* at 1172 (Ex. 8).

    [58]   '805 patent, 2:65–66, Fig. 1A (Ex. 5) ("5" and "6" enlarged for

28   clarification).

1    mean "oriented in the same axial direction."  Thus, the Court should reject the

2    Defendants' proposed construction and instead not construe the term or adopt

3    Fontem's construction.

4    **Significance of construction**: While some of the accused devices include an

5    electric heater that is sleeved by a liquid permeating component, Defendants may

6    argue that the claim language is not met because in some accused devices a liquid

7    permeating component is not oriented in the same axial direction as the heater.[59]

8    9.    **"liquid storage component;" "liquid supply;" "solution storage
           area"**
9

10   Several claims recite a "liquid storage component," a "liquid supply," or a

11   "solution storage area."  The parties' proposed constructions and the claims in

12   which each of the phrases appears is as follows:

13   For the phrase "liquid storage component,"

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary | a hollow, walled container for storing liquid |
| **Claims in which term appears**: '742 patent claim 2; '805 patent claims 1, 3, 7, 9 | |

16   Claim 2 of the '742 Patent recites:

18       2.  An electronic cigarette, comprising:
                 * * *
19       a *liquid storage component* in the housing;
                 * * *
20       the porous component substantially surrounded by the *liquid
         storage component*.

22   For the phrase "liquid-supply,"

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary | liquid-supplying bottle |
| **Claims in which term appears**: '331 patent claims 1–2, 5; '628 patent claims 1, 5–8; '742 patent claim 3; | |

26   Several claims include the phrase "liquid supply."  For example, claim 1 of

---

27   [59]   *See, e.g.*, Plaintiffs' Infringement Contentions re CIG2O Disposable
28   Electronic Cigarette (Ex. 15).

the '331 recites, in part:

> 1. An electronic cigarette comprising;
> a housing;
>           * * *
> a *liquid-supply* within the housing; and
>           * * *
> with the *liquid-supply* in physical contact with the atomizer. . . .

And, for the phrase "solution storage area,"

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary | a bottle for storing liquid |

**Claims in which term appears**: '957 patent claims 1, 2, 8, 10, 23, 24

The '957 Patent claim 1 recites in part:

> 1. An electronic cigarette or cigar comprising:
>           * * *
> a *solution storage area* in the atomizer assembly housing. . . .

The phrases "liquid storage component," a "liquid supply," and a "solution storage area" need no construction. They are easily understood and can be applied by a jury without specialized technical knowledge. The parties appear to agree that each of the phrases requires something that stores liquid or a solution. Defendants' construction, however, limits the simple terms "component," "supply," and "area" to require either a "bottle" or a "hollow, walled container."

Defendants' construction is contradicted by the claims and patent specifications. For example, the '742 patent Figure 4, right, shows an embodiment that includes "a perforated *component for liquid storage* (9) inside the shell."[60] The "component for liquid storage (9)" may be made from a material "suitable for liquid storage," such as "PLA fiber, terylene fiber or nylon fiber," or alternatively, "plastic foam molding or column[s] of multi-layer plates made through plastic injection with polyvinyl chloride, [polypropylene] and

---

[60]      '742 patent, 3:49-57, Fig. 4 (Ex. 1).

polycarbonate."[61]  It is the material occupying the space shown as item 9 that is the "component for liquid storage" in this embodiment, not the entire "cigarette bottle assembly."[62]  There is no language, express or otherwise, in the claims or the '742 patent limiting the liquid storage component to a bottle or a hollow, walled container.  To the contrary, the specification makes clear that the liquid storage component is not a container.

Similarly, referring to Figure 4, right, the '957 patent specification discloses that "[t]he fiber (402) inside the cigarette liquid bottle (401) contains cigarette liquid. . . ."[63]  In this embodiment, the area for storing a solution is the area occupied by the fiber.  There is no language, express or otherwise, in the claims or the '957 patent requiring that the solution storage area be a bottle.  Again, to the contrary, the specification makes clear that the solution storage area is not limited to a bottle.



Moreover, that the '742 patent recites the term "bottle" in other claims confirms that "a liquid storage component" and a "liquid supply" are not limited to a "bottle" or a "hollow, walled container" because different words in different claims are presumed to have different meanings.[64]  Claim 1 of the '742 patent requires a "cigarette bottle assembly."  Whereas claims 2 and 3 require "a liquid storage component" and a "liquid supply."  The '742 patent specification explains the difference between the "cigarette bottle assembly" and the "liquid storage component" stating that "the cigarette bottle assembly includes a hollow cigarette holder shell (b), and a perforated component for liquid storage (9) inside the shell

---

[61]   '742 patent, 3:49-57 (Ex. 1).  See also, '331 patent, 3:8–15; '628 patent at 3:6–13.

[62]   '742 patent, 1:38–39 (Ex. 1).

[63]   '957 patent, 4:6–7; 5:20–22.  See also, id. 2:1  (Ex. 2).

[64]   Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc., 206 F.3d 1440, 1446 (Fed. Cir. 2000).

(b)." That statement confirms that the shell is only a part of the cigarette bottle assembly. But, the portion that stores the liquid is the space within the shell.

Because Defendants' construction conflicts with the plain meaning of the terms and the express disclosure in the specifications, the Court should reject the Defendants' constructions.

**Significance of construction**: While all of the accused products include a liquid supply or component or area to store liquid or a solution, Defendants may argue that their accused devices are non-infringing because some may not include a separate bottle or walled container to store the liquid or solution.[65]

**10.    "projecting into;" "extending into"**

| Fontem's Construction | Defendants' Construction |
|---|---|
| no construction necessary | having only a portion that protrudes into |
| **Claims in which term appears**: '628 patent, claims 1, 6, 7, 8 | |

Claims 1 and 7 of the '628 patent recite, in part:

> 1. An electronic cigarette, comprising:
>     * * *
> a porous body *projecting into* the liquid supply. . . .
>
> 7. An electronic cigarette, comprising:
>     * * *
> a porous body *extending into* the liquid supply. . . .

The terms "projecting into" and "extending into" do not require construction. The terms are easily understood and can be applied by a jury without specialized technical knowledge.

Defendants' construction rewrites those plain claim terms. First, Defendants' construction substitutes "protrudes into" for the plain claim terms "extends into" and "projects into." The phrase "protrudes into" does not appear in the patent or the claims. That substitution does not assist a jury in understanding the terms and is unnecessary.

Second, Defendants' construction of "having *only a portion* that protrudes

---

[65]    *See, e.g.*, Plaintiffs' Infringement Contentions re NJOY King Disposable Electronic Cigarette (Ex. 16).

into" is yet another attempt to import a preferred embodiment into the claims.  For example, Fig. 1 (in view of Fig. 6) of the '628 patent shows a porous body (item 27 of item 9) that projects into or extends into the liquid supply (item 11).  While in this embodiment only a portion of the porous body projects or extends into the liquid supply, the specification does not express an "intent to deviate from the ordinary and accustomed meaning" that would rise to the level of a "clear disavowal of claim scope"[66] required to redefine the terms.  Accordingly, the Court should reject the Defendants' construction and decline to construe the terms.

**Significance of construction**: In conjunction with Defendants' improper construction of "liquid supply" limiting the liquid supply to a "liquid supplying bottle," Defendants may argue that the accused porous body in some of the accused products is entirely within that bottle and thus does not meet the claim limitation.[67]

### 11.   "substantially"

| Fontem's Construction | Defendants' Construction |
| --- | --- |
| no construction necessary or, alternatively, at least largely | largely but not completely |

**Claims in which term appears**: '742 patent claims 1–2

Claims 1 and 2 of the '742 patent recite in part:

1. An aerosol electronic cigarette, comprising;
* * *
with the porous component also positioned *substantially* within the cigarette bottle assembly.

2. An electronic cigarette, comprising:
* * *
the porous component *substantially* surrounded by the liquid storage component.

The term "substantially" does not require construction.  It is easily understood and applied by a jury without specialized technical knowledge.

---

[66]   *Thorner v. Sony Computer Entertainment America LLC,* 669 F.3d 1362, 1366 (Fed. Cir. 2012) (internal quotations omitted).
[67]   *See*, *e.g.*, Plaintiffs' Infringement Contentions re NJOY OneJoy Disposable Electronic Cigarette (Ex. 17, bottom panel).

In the alternative, Fontem proposes that "substantially" be accorded its plain meaning, "at least largely."  In contrast, Defendants propose that "substantially" means "largely, but not completely."

Fontem's proposed construction, "at least largely," is consistent with Federal Circuit precedent and the plain meaning of the term.  The Federal Circuit has held that the term "substantial" implies 'approximate,' rather than 'perfect,'"[68] and has construed the term to mean "largely but not necessarily wholly."[69]  And the Oxford dictionary defines "substantial" as "of large size or amount."[70]  Nothing in the patents-in-suit deviates from that plain meaning.

Defendants' construction, "largely, but not completely," improperly writes a specific embodiment into the claims.[71]  But yet again, the patents-in-suit do not include any "intent to deviate from the ordinary and accustomed meaning" that would rise to the level of a "clear disavowal of claim scope"[72] required to redefine the terms.  Accordingly, the Court should reject the Defendants' construction and instead not construe the term or adopt Fontem's construction.

**Significance of construction**: While all of the accused devices include a porous component, Defendants may argue that the porous component of the accused devices does not infringe because it may be "completely" surrounded by the liquid storage component or within the cigarette bottle assembly.[73]

---

[68]     *See, e.g., Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1329 (Fed. Cir. 2006); *Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907–9 (Fed. Cir. 2005); *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1368 (Fed. Cir. 2004).

[69] *E.g., LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1354 (Fed. Cir. 2001).

[70]     *Oxford* at 1523 (Ex. 11).

[71]     *See, e.g.,* '742 patent, Fig. 1, in view of Figs. 5 and 14 (Ex. 1).

[72]     *Thorner,* 669 F.3d at 1366.

[73]     *See, e.g.,* Plaintiffs' Infringement Contentions re FIN Rechargeable Electronic Cigarette (Ex. 18) and NJOY King Disposable Electronic Cigarette (Ex, 19).

1

## IV.   CONCLUSION

2          For at least the foregoing reasons, the Court should adopt Plaintiffs' proposed

3   constructions or alternatively, not construe any of the terms at issue.

4

5   DATED:  November 3, 2014                         **PERKINS COIE** LLP

6

7                                                    By: /s/ Michael J. Wise
                                                          Michael J. Wise
8
                                                     Attorneys for Plaintiffs and Counter-
9                                                    Defendants
                                                     FONTEM VENTURES B.V. and
10                                                   FONTEM HOLDINGS 1 B.V.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28