LATHAM & WATKINS LLP
Perry J. Viscounty (Bar No. 132143)
*perry.viscounty@lw.com*
Ryan R. Owens (Bar No. 269370)
*ryan.owens@lw.com*
Gunnar B. Gundersen (Bar No. 257350)
*gunnar.gundersen@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
(714) 540-1235 / (714) 755-8290 Fax

Attorneys for Defendant/Counterclaimant
NJOY, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; and FONTEM HOLDINGS 1 B.V., a Netherlands company, <br><br> Plaintiffs, <br><br> v. <br><br> NJOY, INC., a Delaware corporation, and DOES 1-5, Inclusive, <br><br> Defendant. | CASE NO. CV 14-01645 GW (MRW) <br><br> **DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF** |
| AND RELATED COUNTERCLAIMS | |
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CB DISTRIBUTORS, INC., an Illinois corporation; DR DISTRIBUTORS, LLC, *etc. et al.*, <br><br> Defendants. | Case No. CV14-1649 GW (MRWx) |

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1650 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| VAPOR CORP., a Delaware corporation, *etc.*, | |
| Defendant. | |

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1651 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| FIN BRANDING GROUP, LLC, an Illinois limited liability company; VICTORY ELECTRONIC CIGARETTES CORPORATION, *etc. et al.*, | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | |

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al.*, | Case No. CV14-1652 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| BALLANTYNE BRANDS, LLC, *etc.*, | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al*., | Case No. CV14-1653 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| SPARK INDUSTRIES, LLC, *etc.*, | |
| Defendant. | |

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al*., | Case No. CV14-1654 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| LOGIC TECHNOLOGY DEVELOPMENT LLC, *etc.*, | |
| Defendant. | |

| | |
|---|---|
| FONTEM VENTURES B.V., a Netherlands company; *etc. et al*., | Case No. CV14-1655 GW (MRWx) |
| Plaintiffs, | |
| v. | |
| VMR PRODUCTS, LLC, dba V2CIGS, *etc.*., | |
| Defendant. | |

AND RELATED COUNTERCLAIMS

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................. 1

II.     OVERVIEW OF THE PATENTS IN SUIT ...................................... 2

III.    THE LAW GOVERNING CLAIM CONSTRUCTION ..................... 4

IV.     CONSTRUCTION OF THE DISPUTED TERMS ........................... 4

        A.   "Liquid Supply," "Liquid Storage Component," and
             "Solution Storage Area" ........................................................ 5

             1.    "Liquid-Supply" ('331 and '628 Patents)................................ 7

             2.    "Liquid Supply" ('742 Patent) ....................................... 9

             3.    "Liquid Storage Component" ('742 patent) ..................... 11

             4.    "Solution Storage Area" ('957 patent) ......................... 13

        B.   "Cavity" ......................................................................... 14

        C.   "Frame" ......................................................................... 17

        D.   "Housing" and "Integrally Formed" .................................... 19

             1.    "Housing" .............................................................. 19

             2.    "Integrally Formed" ................................................... 22

        E.   "A Mouthpiece on the Housing".......................................... 23

        F.   "Inlet".............................................................................. 25

        G.   "A Liquid Permeating Component Sleeved on the
             Electric Heater"............................................................... 26

        H.   "A Liquid Conduction Component in Contact with the
             Liquid Permeating Component and the Liquid Storage
             Component" ..................................................................... 28

        I.   "Projecting Into" / "Extending Into" ................................. 31

        J.   "Substantially" ................................................................ 33

II.     CONCLUSION ................................................................... 34

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

<u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

Alloc, Inc. v. Pergo, LLC,
 2009 WL 1939034 (E.D. Wis. July 2, 2009)................................................... 32

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.,*
 512 F.3d 1338 (Fed. Cir. 2008) .......................................................................... 6

*Bose Corp. v. SDI Tech., Inc.,*
 828 F. Supp. 2d 415 (D. Mass. 2011) ................................................................ 4

*Ecolab, Inc. v. Environchem, Inc.,*
 264 F.3d 1358 (Fed. Cir. 2001) ........................................................................ 34

*GE Lighting Solutions, LLC v. AgiLight, Inc.,*
 750 F.3d 1304 (Fed. Cir. 2014) ........................................................................ 23

*Honeywell Int'l, Inc. v. ITT Indus., Inc.,*
 452 F.3d 1312 (Fed. Cir. 2006) .......................................................................... 7

*LG Electronics, Inc. v. Quanta Computer Inc.,*
 566 F. Supp. 2d 910 (W.D. Wis. 2008) .............................................................. 6

*Microsoft Corp. v. Multi-Tech Sys., Inc.,*
 357 F.3d 1340 (Fed. Cir. 2004) .......................................................................... 7

*O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Col., Ltd.,*
 521 F.3d 1351 (Fed. Cir. 2008) ...................................................................... 4, 7

*Pagemelding, Inc. v. Feeva Tech., Inc.,*
 2009 WL 2588883 (N.D. Cal. Aug. 19, 2009) ................................................. 17

*ProTec Inc. v. Life-Like Products Inc.,*
 986 F. Supp. 27 (D. Maine 1997) ..................................................................... 27

*Schering Corp. v. Amgen Inc.,*
 222 F.3d 1347 (Fed. Cir. 2000) .......................................................................... 6

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,*
 242 F.3d 1337 (Fed. Cir. 2001) ........................................................................ 18

*U.S. Surgical Corp. v. Ethicon, Inc.,*
 103 F.3d 1554 (Fed. Cir. 1997) ........................................................................ 13

*Verizon Servs. Corp. v. Vonage Holdings Corp.,*
 503 F.3d 1295 (Fed.Cir. 2007) ..................................................................... 7, 13

### OTHER AUTHORITIES

Merriam-Webster's Collegiate Dictionary 812 (11th ed. 2003) ......... 16, 18, 24, 26

Oxford American Dictionary and Thesaurus 222 (1st ed. 2003) ..................... 16, 18

# I.   INTRODUCTION

The modern electronic cigarette traces its history back to at least 1965 when the patent "Smokeless Non-Tobacco Cigarette" issued to Herbert A. Gilbert as U.S. Patent No. 3,200,819.  In the four decades between the issuance of the 1965 Gilbert patent and the filing of the applications that matured into Plaintiffs' asserted patents, a wide variety of electronic cigarettes have been developed.

The five asserted patents describe and claim specific versions of electronic cigarettes that differ significantly from the Defendants' accused products.  Because of these significant differences, Plaintiffs attempt through their claim construction positions to improperly expand the scope of the claims well beyond what is supported by the specification and prosecution history.  For most of the patents, this attempt to broaden began during prosecution.  Specifically, Plaintiffs' litigation and prosecution counsel—Perkins Coie—substantially changed the language of the original specifications and claims under the guise of correcting grammar and translations.  Perkins Coie removed key language from the specifications and inserted ambiguous words into the claims that were never before used in the applications.  Now, Perkins Coie asserts that these terms do not even require construction.

The Court should reject Plaintiffs' attempts to improperly expand the scope of the claims beyond the intrinsic evidence, including both the issued and original specifications.  As detailed below, Defendants' proposed constructions are supported by the intrinsic evidence and are consistent with the ordinary meaning of the disputed claim terms.  They should be adopted.

## II.    OVERVIEW OF THE PATENTS IN SUIT

Plaintiffs have asserted five patents in this suit:  U.S. Patent Nos. 8,365,742 ('742 patent), 8,375,957 ('957 patent), 8,393,331, ('331 patent) 8,490,628 ('628 patent), and 8,869,805 ('805 patent).[1]  The '331 and '628 patents are related; the '628 patent, which issued on July 23, 2013, is a continuation of the '331 patent, which issued on March 12, 2013.  Both claim priority to a March 2005 application and share a common written description.[2]  The patents describe the disclosed invention as "[a]n electronic cigarette [that] includes a shell and a mouthpiece" where "[t]he external wall of the shell has an air inlet."  ('331 patent, Abstract; '626 patent, Abstract.)  The disclosed electronic cigarette also has "[a]n atomizer and a liquid-supply [sic] [that] are in contact with each other" where "[t]he air inlet, atomizer, an aerosol passage, and a mouthpiece are sequentially interconnected."  (*Id*.)  "Liquid-supply" is hyphenated ungrammatically in both these patents because, in the original specification, "liquid-supplying" simply modified "bottle."  It did not and could not refer to any structure other than the "liquid-supplying bottle," which was described as part of the "present invention."  Nevertheless, Perkins Coie improperly deleted "bottle" from "liquid-supplying bottle," thereby transforming a simple modifier ("liquid-supplying") into a noun ("liquid-supply").  It did the same when amending claims of the '331 patent—a crucial change highly relevant to claim construction that will be addressed herein.

---

[1] Plaintiffs have other patent infringement suits pending.  Complaints involving U.S Patent No. 8,156,944 (the parent of the '742 patent at issue here) were filed in June 2012 against many of the same Defendants sued here; those cases are stayed pending an *Inter Partes* Review, in which a final written decision is due by December 30, 2014.  Plaintiffs also just filed suit in October 2014 against all the same Defendants sued here, alleging infringement of U.S. Patent No. 8,863,752 (a continuation of the '957 patent at issue here).

[2] This March 2005 application issued as U.S. Patent No. 7,832,410 on November 16, 2010.  In July 2011, Fontem's predecessor, also represented by Perkins Coie, sued many of the same Defendants for infringement of the '410 patent.  That case is now closed, and all claims dismissed with prejudice.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

2

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

The '742 and '957 patents are also related, sharing a common Chinese application in their histories.  They claim priority, however, to different PCT applications, both dated May 15, 2007.  The '742 patent issued on February 5, 2013; the '957 patent issued on February 19, 2013.[3]  Both patents are directed to a device including a battery assembly, an atomizer assembly, and a cigarette bottle assembly.  Despite the fact that these patents are directed to devices with "cigarette bottle assemblies," Perkins Coie again attempted to cleanse the applications of references to "bottle" during prosecution by striking key portions of the specification, and adding new claims or amending old ones in ways that were inconsistent with the specifications as originally filed.  The '742 patent describes its disclosed invention as "[a]n aerosol electronic cigarette [that] includes a battery assembly, an atomizer assembly and a cigarette bottle assembly and also includes a shell (a) which is hollow and integrally formed."  ('742 patent, Abstract.)  The "[s]aid cigarette bottle assembly is located in one end of the shell (a), which is detachable" and "[s]aid cigarette bottle assembly fits with said atomizer assembly." (*Id.*)  Also, the "[s]aid shell (a) has through-air-inlets (a1)."  (*Id.*)

The '957 patent puts particular emphasis on the electronic cigarette having a battery assembly and screwthread electrodes that connect the battery assembly with the atomizer assembly.  For example, the '957 patent describes its invention as "[a]n emulation aerosol sucker [that] includes a battery assembly, an atomizer assembly and a cigarette bottle assembly" where "[s]aid battery assembly and said atomizer assembly are connected by the screwthread electrode" and "[s]aid cigarette bottle assembly is inserted into the other end of said atomizer assembly and both form one cigarette type or cigar type body."  ('957 patent, Abstract.)

---

[3] The '742 patent is a divisional of the '944 patent, which is currently asserted against many of the same Defendants in cases that have been stayed pending an IPR.  The '957 is a parent of the '752 patent, which was recently asserted against Defendants in newly-filed October 2014 suits.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    The '805 patent issued on April 8, 2014, and claims priority to a January

2    2010 application.  The '805 patent differs from the other patents by virtue of a

3    channel that extends through a liquid storage component.  For example, the '805

4    patent describes its invention as "[a]n atomizing electronic cigarette [that] has an

5    atomizing core component and a liquid storage component, including an electric

6    heater" where "[t]he electric heater may have a through hole aligned with a

7    channel passing through the liquid storage component."  ('805 patent, Abstract.)

8    ## III.   THE LAW GOVERNING CLAIM CONSTRUCTION

9        This Court is familiar with the law of claim construction and this

10   memorandum incorporates by reference the overviews of claim construction

11   principles found in this Court's recent opinions.  *See, e.g.*, *McRO, Inc., d.b.a.*

12   *Planet Blue v. Namco Bandai Games Am. Inc.*, Case No. CV 12-10322-GW, Dkt.

13   No. 298-1 at 2-3 (C.D. Cal. May 1, 2014).

14   ## IV.   CONSTRUCTION OF THE DISPUTED TERMS

15       As a preliminary manner, the Plaintiffs have taken the position that many of

16   the disputed terms need not be construed.  But given that the parties have different

17   understandings of these terms, the Court should construe these terms to resolve the

18   parties' disputes rather than let issues of claim interpretation be decided by the

19   jury.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Col., Ltd.*, 521 F.3d 1351,

20   1361 (Fed. Cir. 2008).  ("A determination that a claim term 'needs no construction'

21   or has the 'plain and ordinary meaning' may be inadequate when a term has more

22   than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does

23   not resolve the parties' dispute.").

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

## A. "Liquid Supply," "Liquid Storage Component," and "Solution Storage Area"

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|------|----------|---------------------|---------------------|
| "liquid supply" or "liquid-supply" | '331 claims 1-2, 5; '628 claims 1, 5-8; '742 claim 3 | liquid-supplying bottle | no construction necessary |
| "liquid storage component" | '742 claim 2 | a hollow, walled container for storing liquid | no construction necessary |
| "solution storage area" | '957 claims 1, 2, 8, 10, 23, 24 | a bottle for storing liquid | no construction necessary |

The parties' dispute regarding the meaning of these terms boils down to whether liquid must be stored in a hollow, walled container (e.g., a bottle) that is distinct from the shell or housing of the device (Defendants' proposal) or whether no construction is needed for these terms (Plaintiffs' position). If Defendants' proposed constructions are adopted, most of the accused products would not infringe any asserted claims of the '331, '628, '742, and '957 patents because these accused products do not include a hollow container or bottle for storing liquid.[4]

As discussed in more detail below, the intrinsic evidence supports Defendants' constructions. A bottle is the only type of liquid storage disclosed in the specifications of these four patents, both as originally filed and as issued. During prosecution, Plaintiffs' counsel Perkins Coie heavily revised the original applications by removing references to the invention as including a "bottle" for liquid storage.[5] To convince the PTO to allow these late amendments, Perkins

---

[4] Fontem has essentially admitted this fact by accusing only *one* defendant and *one* product of infringing claim 1 of the '742 Patent, which recites a "cigarette bottle assembly."

[5] Defendants reserve the right to challenge the validity of these claims as violating the prohibition against new matter under §132 and lacking written description support under §112 if the Court does not adopt Defendants' constructions. Indeed,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1   Coie represented that the revisions were made to correct "grammatical and/or

2   translation errors in the original specification" (Ex. 1 ("4/12/12 Amendment") [6] at

3   7) and further stated that the claims were "substantially the same" as the prior

4   claims that included the "bottle" limitation (Ex. 4 ("8/12/12 Response") at 81).

5   Given the representation that there were no substantive revisions, the original

6   applications provide clarity on the scope of the specifications and reinforce that the

7   modified specifications of the issued patents only disclose bottles for liquid

8   storage.  *See Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353 (Fed. Cir. 2000)

9   (substituted claim term was construed "to cover no more than what the

10  specification supported at the time of filing" to avoid new matter concerns and

11  because "to grant broader coverage would reward [the inventor] for inventions he

12  did not make").[7]  Plaintiffs should be held to their word that the amendments to the

13  specification and claims did not change the scope of their patents. [8]

14

---

15  courts have found that deleting limitations from a specification can result in the
    improper addition of new matter.  *See, e.g.*, *LG Electronics, Inc. v. Quanta*

16  *Computer Inc.*, 566 F. Supp. 2d 910, 915 (W.D. Wis. 2008) (concluding patent was
    invalid because the specification referred to "the present invention" as limited to

17  devices using a magnetic tape, and "plaintiff was not free to delete that

18  limitation.").

    [6] Exhibits ("Ex.") are sequentially numbered and attached to the accompanying

19  Declaration of Gunnar B. Gundersen.
    [7] *See also Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed.

20  Cir. 2008) ("This court agrees, however, with the district court's careful and
    accurate analysis in its construction of "sealed sleeve" as limited to "heat-sealed

21  sleeve" in the Reissue patent.  This court has consistently recognized that the
    Patent Act prevents an applicant from adding new subject matter during the patent

22  prosecution process.").
    [8] Defendants' constructions for these terms are also consistent with a means-plus-

23  function analysis of these terms.  Plaintiffs' removal of the structural limitation
    (bottle) in the original claims, left these terms devoid of structure recognizable by

24  persons of ordinary skill in the art: "liquid supply" and "liquid storage" recite only

25  the function served; "component" is recognized as a substitutes for "means"
    (MPEP §2181 (I)(A); *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed.

26  Cir. 2008)); and "area" is similarly generic.  Under such circumstances, a means-
    plus-function analysis limits the scope of the terms to the structures disclosed in

27  the specification.  *Robert Bosch, LLC v. Snap-On, Inc.*, 2014 WL 5137569, *6-7

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

6

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    Plaintiffs propose that these terms not be construed so that they may advance

2    overbroad and ambiguous infringement contentions predicated on claim scope far

3    beyond what was actually invented.  Declining to construe these terms will not

4    resolve the parties' dispute regarding their claim scope, will invite mischief from

5    Plaintiffs in front of the jury, and is contrary to the law.  *See O2 Micro*, 521 F. 3d

6    at  1361.

7         **1.    "Liquid-Supply" ('331 and '628 Patents)**

8    Based on the written descriptions and prosecution histories of these related

9    patents, "liquid supply" refers to a "liquid-supplying bottle."  Indeed, this is the

10   only possible construction consistent with the disclosure of the original application

11   and the issued patents.

12   The original written description includes multiple disclosures limiting the

13   scope of the invention to an electronic cigarette with a liquid-supplying bottle,

14   including several statements describing the features of the "present invention."[9]  In

15   the Summary of Invention, the original written description stated that "[t]he

16   **present invention** includes a shell; a mouthpiece; an air inlet provided in the

17   external wall of the shell; an electronic circuit board, a normal pressure cavity, a

18   sensor, a vapor-liquid separator, an atomizer, a **liquid-supplying bottle** arranged

19   sequentially within the shell." (Ex. 2 at 47 (emphasis added).)  It also stated that

20   "[t]he **present invention** also discloses an electronic atomization cigarette with

21   another structure, wherein the atomizer is postposed within the shell, the **liquid-**

---

(Fed. Cir. October 14, 2014) (holding "program recognition device" invokes 112¶6).

[9] "When a patent thus describes the features of the "present invention" as a whole, this description limits the scope of the invention."  *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318–19 (Fed. Cir. 2006) (specification's statements regarding "this invention" and "the present invention" limited claim scope); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1346–51 (Fed. Cir. 2004) (specification's "repeated[] and consistent[]" statements about invention, particularly in the Summary of the Invention, limited claim scope).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

7

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1  **supplying bottle** is arranged….” (*Id.* at 48(emphasis added).)  Similarly, the

2  Description of Drawings in the original written description stated that “FIG. 11 is a

3  structural diagram of the connection of a **liquid-supplying bottle** and a

4  mouthpiece **according to the present invention.**” (*Id.* at 50 (emphasis added).)

5  Consistent with these statements, the disclosed embodiments of the ’331 and ’628

6  patents each describe and show a “liquid-supplying bottle 11”:



FIG. 1

12  Despite these limiting disclosures, the prosecution history evidences an

13  intentional effort to broaden the claims beyond “bottle.”  On November 11, 2010,

14  the ’331 patent was filed with one independent claim.  It included a “liquid-

15  supplying bottle” limitation.  On March 30, 2011, Applicant cancelled this claim

16  and added three new independent claims, each of which also included “a liquid-

17  supplying bottle” limitation.  (Ex. 3 (“3/30/11 Preliminary Amendment”) at

18  71-73).)  A year later, Applicant shifted course.  On April 12, 2012, Applicant filed

19  an amendment that struck “bottle” from key portions of the written description,

20  such as the Summary of the Invention:

22  **[0009]**    ~~The present invention~~ includes a shell; a mouthpiece; an air inlet provided

23  in the external wall of the shell; an electronic circuit board, a normal pressure cavity, a

24  sensor, a vapor-liquid separator, an atomizer, a liquid-supply~~ing bottle~~ and arranged

25  (Ex. 1 at 23.)  Applicant did the same in the Abstract:

27  ~~pressure cavity is provided in the sensor. The~~ atomizer and ~~the~~ a liquid-supply~~ing bottle is~~ are

28  in contact with each other. ~~An atomization cavity is arranged in the atomizer. A retaining~~

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

8

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS’ OPENING CLAIM
CONSTRUCTIONS BRIEF

1 (*Id.* at 33.)  Along with these revisions, Applicant cancelled all pending claims and

2 added many new claims.  In place of "liquid-supplying bottle," the two new

3 independent claims each included a "liquid supply source" limitation.  In support

4 of these new claims, Applicant simply pointed to the liquid-supplying bottle (11):

5 "the claimed elements are shown in Figs 1, 2 and 6 as follows:  liquid supply

6 source (11)."  (*Id.* at 7.)

7       After the PTO deemed this amendment to be non-compliant, Applicant again

8 cancelled all pending claims and added new claims 85-104.  This time, the

9 independent claims included a "liquid supply" limitation.  In support of the

10 amendment, Applicant noted that "new claims 85-104[] are substantially the same

11 as [cancelled] claims 43-63"—*all* of which had included a "liquid-supplying

12 bottle" limitation.  (Ex. 4 ("8/8/2012 Amendment") at 81.)  Applicant further

13 admitted that the new claims tracked the "liquid-supplying bottle" claims in

14 substance: "[n]ew independent claims 85, 97 and 101 **in substance track** claims

15 43, 44, and 59, with 'shell' changed to 'housing,' 'cell' changed to 'battery',

16 **'liquid-supplying bottle' changed to 'liquid-supply'…."**  (*Id.*)  Applicant's

17 remarks provide further support for construing "liquid supply" as "liquid supplying

18 bottle."

19                  **2.       "Liquid Supply" ('742 Patent)**

20       The term "liquid supply" in claim 3 of the '742 patent should also be

21 construed as "liquid-supplying bottle."  When Perkins Coie took over the

22 prosecution of the '742 patent in August 2012, it struck numerous lines from the

23 specification and introduced elements that were not consistent with the original

24 disclosure, just as it did with the '331 and '628 patents.  (Ex. 5 ("8/7/12

25 Amendment to Specification") at 91-121.)  As originally filed, the '742 application

26 had only one independent claim, which issued as claim 1, and which contains the

27 limitation "cigarette bottle assembly."  This claim limitation is consistent with the

28 specification, both as originally filed and as issued.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

9

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    Perkins Coie, however, added claim 3 and the "liquid supply" limitation,

2   without any reference to a bottle or an assembly.  At the same time, Perkins simply

3   crossed out large portions of the original specification that described the invention

4   of the '742 patent as directed to a device with a cigarette bottle assembly.  (*Id.*)

5   Tellingly, Perkins struck virtually the entire Summary of Invention, including the

6   statement that "[t]he **purpose of this invention** is fulfilled with the following

7   technical solution: an aerosol electronic cigarette includes a battery assembly, an

8   atomizer assembly and **a cigarette bottle assembly**" and the statement that "[t]he

9   said cigarette bottle assembly is located in one end of the shell, which is

10   detachable.  The said cigarette bottle assembly fits the said atomizer assembly."

11   (*Id.* at 93.) (emphasis added).  If construed broadly, the "liquid supply" limitation

12   of claim 3 is simply not supported by the original disclosure.[10]

13    Moreover, Plaintiffs replaced the language above with statements that

14   continued to emphasize a bottle as part of the invention:  "To overcome the above-

15   mentioned disadvantages, an aerosol electronic cigarette includes a battery

16   assembly, an atomizer assembly and a **bottle assembly**." ('742 patent, 1:28-30.)

17   And the specification as issued uses the term "liquid supply" to refer to a **liquid**

18   **supply bottle**.  Specifically, the specification discusses an external charging device

19   including a case that stores "a spare **liquid supply bottle** (4) in it." ('742 patent,

20   4:53-54 (emphasis added).)  The spare liquid supply bottle (4) is shown in Figure 2

21   below:

22

23

24

25

─────────────────────────────

26   [10] When adding claim 3, Perkins purported to distinguish it from claim 1 by stating
     that the porous component in claim 3 is "in contact with a liquid supply in the
27   housing, rather than the removable bottle assembly" of issued claim 1.  (Ex. 5
     ("8/7/12 Remarks") at 89-90.)  But distinguishing newly added claim 3 from claim
28   1 does not render it consistent with or supported by the specification.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

10

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF



The specification further explains how the liquid supply bottle is changed: "[t]he user just needs to plug the **cigarette bottle assembly** in the open end of the shell (a), for easy use and very easy change." (*Id.*, 3:46-48.) "FIG. 2 is the section view of the housing (a) separated from the cigarette bottle assembly." (*Id.*, 1:46-47.)



### 3. "Liquid Storage Component" ('742 patent)

Claim 2 and the "liquid storage component" limitation of the '742 patent were added at the same time as Claim 3, when Perkins also struck large portions of the specification. As with "liquid supply," the "liquid storage component" should be construed to cover the disclosure of the issued patent as well as the original application. As set forth above, the '742 patent is directed to an electronic cigarette that includes a "cigarette **bottle** assembly." Indeed, when adding claim 31 (issued claim 2) with a "liquid storage component" limitation, Perkins stated: "New claim 31 [issued claim 2] is similar to claim 30 [issued claim 1] and **includes the elements of claim 30, but written with more common English usage**." (Ex. 6 ("8/3/12 Remarks") at 125 (emphasis added).) If claim 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

11

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

containing the "liquid storage component" limitation "includes the elements" of claim 1 and the "cigarette bottle assembly" limitation, the liquid storage component must contain a bottle-like structure, *i.e.,* the "hollowed, walled container" proposed by Defendants.

While a "liquid storage component" obviously refers to a part of the electronic cigarette that stores liquid, the key dispute between the parties is *what* stores the liquid. Plaintiffs would prefer not to construe the term so that they can advance overbroad infringement contentions unconstrained by the requirement of a "bottle." In contrast, Defendants construe the term in view of the specification and thus recognize that the liquid storage component is a walled container that has its own walls distinct from the walls of the electronic cigarette itself. As illustrated by Figure 2 below, the cigarette bottle assembly comprises a "hollow cigarette holder shell (b)" that may be inserted into shell (a) of the electronic cigarette device. ('742 patent, 3:49-50.)



Figure 2

As shown in Figure 2, the cigarette bottle assembly is detachable to allow for the use of a "spare liquid supply bottle." ('742 patent, 4:53-54.) Thus, the "hollow cigarette holder shell (b)" of the cigarette bottle assembly is a hollow, walled container so that it can store liquid even when removed from the shell of the electronic cigarette.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

12

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

### 4.    "Solution Storage Area" ('957 patent)

Plaintiff argues that no construction is necessary despite the fact that the term "area" is amorphous and devoid of structure, contrary to the specification of the patent.  Failing to construe "solution storage area" would not resolve the bounds of the invention, aid the jury, and or resolve the parties' dispute.[11]  On the other hand, Defendants' proposed construction, "a bottle for storing liquid," is consistent with the written description as filed and as issued, both of which repeatedly disclose a "**cigarette bottle assembly**[that] includes the **cigarette liquid bottle**."  Defendants' proposed construction is also supported by the prosecution history of the '957 patent, which again reveals a deliberate effort to run away from "bottle" and to add broader claims, despite the lack of support in the specification.

The term "solution storage area" is not found in the '957 patent, other than in the claims.  Claims reciting this term were simply added during prosecution, despite the lack of support in the specification.  As issued, the Summary of Invention of the '957 patent limits the scope of the "present invention" to a device including a "cigarette bottle assembly," which is inserted into the atomizer assembly.[12]  *See, e.g.*, *Verizon Servs. Corp.*, 503 F.3d at 1295.  The Summary of Invention further states that "the said **cigarette bottle assembly** includes **the cigarette liquid bottle,** fiber, and suction nozzle."  ('957 patent, 1:66-67.)  Additionally, each of the disclosed embodiments of the '957 patent includes a

---

[11] *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (purpose of claim construction is to resolve "disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement").

[12] The Summary of Invention states: "**[t]he present invention includes** a battery assembly, an atomizer assembly and a **cigarette bottle assembly**. ('957 Patent at 1:46-47.)  The Abstract similarly states that "[a]n emulation aerosol sucker includes a battery assembly, an atomizer assembly and **a cigarette bottle assembly**."  (*Id.* at Abstract.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

13

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1  cigarette bottle assembly with a cigarette liquid bottle.  (*Id.*, 2:63, 5:7.)

2  Consistent with these disclosures, the only independent claim of the '957

3  application as originally filed included the following limitation: "the said **cigarette**

4  **bottle assembly** includes the **cigarette liquid bottle**."  This claim was later

5  cancelled.  (Ex. 7 ("3/7/11 Amendment") at 129.)  In its place, Applicant added

6  independent claim 33, which also recited a "**cigarette bottle assembly** including a

7  **cigarette liquid bottle**."  (*Id.*)  On December 8, 2011, however, after Perkins took

8  over prosecution of the '957 patent, claim 33 was heavily rewritten.  (Ex. 8

9  ("12/8/11 Amendment") at 157-58.)  As with the '331 application, "bottle" was

10  removed from the claim, and replaced with the amorphous "solution":

11  a cigarette ~~bottle~~ solution assembly ~~including~~ comprising a first end and a second

12  end, and a cigarette ~~liquid bottle~~ solution storage area, wherein the first end of the

13  cigarette ~~bottle~~ solution assembly is inserted into the first ~~one~~ end of the atomizer

14  assembly, thus forming a cigarette or cigar body.

15  (*Id.*)  Thus, "cigarette bottle assembly" became "cigarette solution assembly" and

16  later, just "solution assembly."  Similarly, "cigarette liquid bottle" became

17  "cigarette solution storage area," which later became simply "solution storage

18  area" in the claims that issued.

19  "Solution storage area" is simply not supported by the specification if it is

20  left unconstrued.  Defendants' construction is consistent with the "cigarette liquid

21  bottle" that pervades the patent, and should be adopted.

22  **B.  "Cavity"**

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|------|----------|----------------------|----------------------|
| "cavity" | '331 claims 1-2; '628 claim 3 | a hollow space within and completely surrounded by the body of the atomizer | no construction necessary or, alternatively, a hollow space |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

14

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    The dispute here is over whether "cavity" describes (1) a hollow space

2    within an atomizer that is completely surrounded by the body of the atomizer

3    (Defendants' position) or (2) any hollow space in the atomizer (Plaintiff's

4    position).  Nearly all of the Defendants' accused products lack any structure that

5    would correspond to the atomizer described in the '331 and '628 patents having a

6    hollow space completely surrounded by the body of the atomizer.  Adopting

7    Defendants' construction would thus provide non-infringement positions for most

8    of the accused products.

9        The intrinsic and extrinsic evidence supports Defendants' position.  The

10   term "cavity" is used in claims of the '331 and '628 patents to describe a structural

11   feature of the claimed electronic cigarette's "atomizer."  (*See* '331 patent, claim 1

12   ("a **cavity** arranged in the **atomizer**"), claim 2 ("the **atomizer** having a heating

13   element within a **cavity**"); '628 patent, claim 2 ("The electronic cigarette of claim

14   1 further including an atomization **cavity** within the **atomizer**.").)  The parties

15   agree that the "atomizer" is "a component that converts liquid into aerosol or

16   vapor."  [Dkt. No. 34-1 (agreed construction of "atomizer").]  The common

17   specification of the '331 and '628 patents explains that an "atomization cavity is

18   arranged in the atomizer."  ('331 patent, 1:63-64; '628 patent, 1:63-64.)   As shown

19   in Figure 1 of these patents, the "atomizing cavity" is within and completely

20   surrounded by the body of the atomizer.



FIG. 1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

Figure 6 of the patents also shows the atomizing cavity within the atomizer and further shows the atomization cavity wall that separates the cavity from the body of the atomizer.

Because the cavity is completely surrounded by the body of the atomizer, the



specification explains that the atomizer has a "porous body" so that air, liquid, and vapor can pass to and from the atomizing cavity through the body of the atomizer. ('628 patent, 2:61-64 ("[t]he atomization cavity wall 25 is surrounded with the porous body 27"), 3:45-63 ("[t]he high speed stream passing through the ejection hole drives the nicotine solution in the porous body 27 to eject into the atomization cavity 10 in the form of droplets.").

Defendants' construction is entirely consistent with all of the intrinsic evidence.  The claims describe the cavity as being "in" or "within" the atomizer. The specification always describes the cavity as being completely within and surrounded by the body of the atomizer, which is why the atomizer body is porous. Dictionary definitions of "cavity" are also consistent with its use in the asserted patent, *e.g.*, "an unfilled space **within a mass**…"[13] or "a hollow **within a solid body**."[14]  In contrast, Plaintiff's construction of "cavity" would cover embodiments nowhere described or even hinted at in the specification.

---

[13] Dkt. No. 34-2 at 1 (Merriam-Webster's Collegiate Dictionary 812 (11th ed. 2003) at "cavity.")

[14] Dkt. No. 34-2 at 1 (Oxford American Dictionary and Thesaurus 222 (1st ed. 2003) at "on.")

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

16

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

*Pagemelding, Inc. v. Feeva Tech., Inc.*, 2009 WL 2588883, at *9 (N.D. Cal. Aug. 19, 2009) ("Plaintiff's construction is rejected because it significantly broadens the claim terms beyond what was provided for in the specification."). The Defendants' construction should be adopted.

### C.  "Frame"

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|------|----------|----------------------|----------------------|
| "frame" | '742 claims 1-3 | an underlying, rigid structure on which the porous component is set | no construction necessary or, alternatively, a support |

The dispute here is over whether "frame" describes: (1) a rigid structure on which the porous component is set (Defendants' position); or (2) some unidentified "support" (Plaintiff's position).  Adopting Defendants' construction would provide non-infringement positions for most of the accused products because they have no underlying, rigid structure on which a porous component is set. The claims and intrinsic evidence establish that the "frame" refers to an underlying, rigid structure that is part of the atomizer upon which the porous component is set.  Claims 1 and 2 both recite that "the porous component is supported by the frame."[15]  The discussion of "frame" in the specification describes the structure and function of the frame limitation: "In the fifth preferred embodiment, as shown in FIGS. 17 and 18, the atomizer assembly is an atomizer (8), which includes **a frame (82)**, the **porous component (81) set on the frame (82)**, and the heating wire (83) wound on the porous component (81)."  ('742 patent, col. 5, lines 42-47.)

Defendants' proposed construction is the only one consistent with this description.  "Set on" describes the physical relationship between the frame and the

---

[15] Claim 3 recites "a frame having a run-through hole, and a porous component between the frame and the outlet."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

17

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

porous component – namely that the two are in contact.  Reference to FIGS. 17 and 18 further establishes that the invention contemplated that the porous component (81) is set on the frame 82.[16]  These figures show the porous component in physical contact with the frame and being physically supported by the same, with the porous component conforming to the shape of the frame.



Moreover, that a "frame" refers to an underlying, rigid structure is confirmed by the dictionary definitions that Fontem itself cited.  Dkt. No. 34-2 at 2 (*Oxford American Dictionary & Thesaurus* (1st ed. 2003) (defining frame as "the basic **rigid** supporting **structure**"); Merriam-Webster's Collegiate Dictionary 11th ed. 2003 (defining frame as "the **underlying** constructional system or **structure that gives shape or strength**.").)

Plaintiffs, however, propose not construing "frame," despite the fact that the specification gives clear guidance as to the meaning of "frame" within the context of the claimed invention.[17]  Providing no construction will leave the jury without guidance as to the meaning of "frame."  And construing "frame" as "a support," as Plaintiffs propose in the alternative, would only confuse the jury.  Indeed, if

---

[16] Fig. 18 as published omitted two reference numerals; the drawings as originally filed included reference numerals 82 and 81, which are shown here in red.

[17] *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341-44 (Fed. Cir. 2001)(construing the term "inflation lumen" in view of the specification to be limited to a coaxial lumen, rather than any dual lumen).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

18

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1   Plaintiffs' construction were adopted, the relevant portion of claims 1 and 2 would

2   read "porous component supported by a [frame] support."  That the porous

3   component is "supported" by a "support" will not be helpful to the jury.

4   Accordingly, the Court should adopt Defendants' proposed construction.

5        **D. "Housing" and "Integrally Formed"**

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|---|---|---|---|
| "housing" | '742 claims 1-3; '331 claims 1, 2-5; '628 claims 1-8; '957 claims 1, 2, 5, 10, 23 | a one-piece shell | no construction necessary or, alternatively, a casing |
| "integrally formed" | '742 claim 1 | made of one piece | no construction necessary or, alternatively, formed by parts that make up a whole |

17        **1.    "Housing"**

18        The dispute with respect to "housing" focuses on whether the shell may be

19   made of one piece or multiple pieces.  Because the intrinsic evidence consistently

20   discloses unitary housings, Defendants propose that the term be construed as "a

21   one-piece shell."

22        The terms "shell" and "housing" are used interchangeably by the patentee in

23   the '742, '331, '628, and '957 patents.  This is demonstrated repeatedly throughout

24   their claims, specifications, and prosecution histories.  For example, the written

25   description of the '742 patent states that the electronic cigarette "includes a shell or

26   housing (a), which is hollow and integrally formed."  ('742 patent, 2:32-33.)  In

27   addition, the **claims** of the '331, '957, and '628 patents only utilize the term

28   "housing," whereas their **specifications** only utilize the term "shell."  Because the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

19

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1  claims should not be enlarged beyond what the inventor has described as his

2  invention, the scope of the term "housing" must not be broader than the scope of

3  the term "shell."  The '742 patent, however, illustrates that the patentee understood

4  the terms to encompass the <u>same</u> scope.

5        Claim 1 of the '742 patent refers to "shell," whereas claims 2 and 3 utilize

6  the term "housing."  The prosecution history explains the reason for the change in

7  terminology.  In a Non-Final Office Action dated July 19, 2012, the examiner

8  stated the only pending claim—prosecuted claim 30, which became issued claim

9  1—would be allowed if the applicant made a minor amendment to address an

10 antecedent basis issue unrelated to the term "shell."  In response, the applicant

11 made the proposed change to the pending claim but also proposed two new

12 claims—prosecuted claims 31 and 32, which became issued claims 2 and 3.  (Ex. 5

13 ("8/7/12 Amendment and Response") at 88.)  The applicant emphasized that these

14 new claims should be allowed for the same reasons as claim 1, explaining that the

15 change in terminology was so that claims 2 and 3 are "written with more common

16 English usage."  (*Id.* at 89-90.)  The applicant further assured the examiner that

17 claims 2 and 3 include the same elements as claim 1.  (*Id.*)  Subsequently, based on

18 these assurances by the applicant, the examiner allowed claims 1-3.  The patentee

19 cannot now argue that the term "shell" is distinguishable from, or has a different

20 scope than, "housing."

21       Similarly, during prosecution of the '331 patent, the applicant proposed

22 claims that utilize the term "shell," which were subsequently replaced by claims

23 that utilize "housing."  The applicant asserted the claims were "substantially the

24 same" and that the changes were merely "stylistic and word usage changes."  (Ex.

25 4 ("8/8/12 Amendment and Response") at 81.)  The applicant submitted this

26 Amendment and Response in the prosecution of the '331 patent one (1) day after it

27 did so in the prosecution of the '742 patent.  The applicant clearly understood the

28 words "housing" and "shell" to be interchangeable.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

20

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

It is evident that "shell" and "housing" are used to refer to a unitary, one-piece shell.  The electronic cigarette of the invention claimed in the '742 patent has components "installed inside the integrally formed shell [or housing] (a) to form a one-piece part."  ('742 patent, 3:43-44; *see also id.*, 2:32-33.)  Moreover, as discussed above, the patentee used the term "integrally formed" to convey the concept of a unitary construction.

The '742, '331, and '628 patents disclose a **single** shell or housing that contains the various components of the electronic cigarette.  For instance, the '331 and '628 patent specifications teach, "A LED 1, a cell 2, an electronic circuit board 3, a normal pressure cavity 5, a sensor 6, a vapor-liquid separator 7, an atomizer 9, a liquid-supplying bottle 11 and a mouthpiece 15 are sequentially provided within the shell 14."  ('331 patent, 2:34-37; '628 patent, 2:32-35.)  As discussed above with respect to "integrally formed," the same is true for the '742 patent.  Likewise, the claims of these patents are limited to components that are all "within," "in," or "on" the housing.  The figures of the '742, '331, and '628 patents also disclose a single shell that houses the components of the claimed electronic cigarettes.  (*See* '742 patent, Figs. 1-2, 19; '331 & '628 patents, Figs. 1-3.)  Thus, these patents disclose the use of a single shell that houses their key components.

In contrast, the '957 patent discloses **two** shells or housings, further underscoring the reason that the housings must be unitary.  The first housing is what the specification refers to as the primary shell (211), which the claims call the "battery assembly housing."  The primary shell or battery assembly housing contains the parts that make up the battery assembly, such as the battery, circuit board, and sensor.  (*See* '957 patent, 3:4-8; claims 1, 10, 23.)  The second housing is the secondary shell (306), referred to in the claims as the "atomizer assembly housing."  The secondary shell or atomizer assembly housing contains the parts that make up the atomizer assembly, including the atomizer.  (*See id.*, 3:32-34; claims 1, 10, 23.)  The battery assembly housing and the atomizer assembly

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

21

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1   housing are each made of one piece.  The figures of the '957 patent depict two

2   unitary shells that house their respective assemblies in their entirety.  (*See* '957

3   patent, Figs. 1-5B, 12.)  These unitary housings contain all of the parts that

4   comprise their respective assemblies.  To hold otherwise would effectively

5   eliminate these limitations from the claims, which is improper.

6          In sum, this Court should construe "housing" as "a one-piece shell"  as

7   intended by the claims, specifications, and patentee's statements to the PTO.  If the

8   Court adopts Defendants' proposed construction of "housing," Plaintiff will be

9   precluded from asserting infringement of accused instrumentalities having multiple

10  shells that house less than all the elements required by the claims.

11                     **2.       "Integrally Formed"**

12         The term "integrally formed" appears in claim 1 of the '742 patent   The

13  dispute regarding this phrase also centers around whether the shell may encompass

14  multiple shells, as Plaintiff contends, or whether the shell must be of unitary

15  construction.  Defendants request that the Court construe "integrally formed" to

16  mean "made of one piece" because this construction stays true to claim 1 and to the

17  '742 patent specification.

18         Claim 1 of the '742 patent describes the four major components of the

19  claimed electronic cigarette:  the shell and the three assemblies located in the

20  shell—the battery assembly, the atomizer assembly, and the cigarette bottle

21  assembly.  (*See* '742 patent, 6:10-13. )  The drafter of claim 1 clearly intended that

22  the shell be a one-piece part that houses each of these assemblies.

23         The specification of the '742 patent explains that the shell is of unitary

24  construction, stating that "the battery assembly and atomizer assembly are

25  mutually connected and then installed inside the integrally formed shell (a) to form

26  a **one-piece** part."  ('742 patent, 3:42-44 (emphasis added).)  Moreover, the figures

27  illustrate that the disclosed invention is limited to a single shell or housing (labeled

28  "a") that contains the battery assembly, atomizer assembly, and cigarette bottle

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

22

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

assembly.  (*See* '742 patent, Figs. 1, 2, 19.)  Thus, Plaintiffs' proposed construction (which requires "parts that make up a whole") would not read on the disclosed embodiments of the '742 patent, each of which has a one-piece shell.  This is contrary to Federal Circuit law holding that claims should not be interpreted to exclude all of the embodiments.  *See, e.g., GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1311 (Fed. Cir. 2014) ("We normally do not construe claims in a manner that would exclude the preferred embodiment, especially where it is the only disclosed embodiment.").  Furthermore, The American Heritage Dictionary defines "integral" as "a complete unit; a whole" (i.e., a single, unitary part).  (Ex. 9 (*The American Heritage Dictionary*, at "integral.")

If the Court adopts Defendants' proposed construction of "integrally formed," Plaintiff will be precluded from asserting infringement of accused instrumentalities having two housings, one of which houses the so-called cigarette bottle assembly and the other of which houses the so-called battery and atomizer assemblies.

### E. "A Mouthpiece on the Housing"

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|------|----------|----------------------|----------------------|
| "a mouthpiece on the housing" | '331 claims 1-2 | a structure that is adapted to be gripped by the user's mouth and that is attached on the housing | no construction necessary for the phrase or, alternatively, for the term mouthpiece, the part of an electronic cigarette that is placed at or in the user's mouth. |

Claims 1 and 2 of the '331 patent both claim a "housing" and separately "a mouthpiece on the housing."  Defendants construe this term consistent with the intrinsic evidence where the term describes the "mouthpiece" as a structure that is attached to the housing and gripped by a user's mouth.   In contrast, Plaintiffs construe "mouthpiece" to be any part of the electronic cigarette that interacts with

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
ORANGE COUNTY

23

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1   the user's mouth.  Many of the accused products lack a separate "mouthpiece" and
2   therefore would not infringe claims 1 and 2 of the '331 patent under Defendants'
3   construction.

4   The specification of the '331 patent consistently uses "mouthpiece" to
5   describe a portion of the described electronic cigarette that is separate from the
6   housing or shell.  For example, in the summary of the invention, the patentee
7   describes the invention as including "a shell; a mouthpiece … an atomizer, and a
8   liquid-supply arranged sequentially within a shell."  ('331 patent, 1:56-62; *see also*
9   *id.*, Figs. 1, 11.)

10   Dictionary definitions of "on," confirm the use in the specifications, claims,
11   and prosecution histories of the asserted patents to describe a structure separate
12   from the housing.  Specifically, the dictionary definitions of "on" consistently
13   describe one object's proximity to a wholly separate object, *e.g.*, **on (preposition):**
14   "used as a function word to indicate position in contact with and supported by the
15   top surface of <the book is lying on the table>" or "in or in contact with an outer
16   surface" or "in close proximity with." [18]

17   Plaintiffs' construction is meaningless.  Every electronic cigarette claimed in
18   the asserted patents must have some portion that interacts with a user's mouth.  But
19   only the '331 patent specifically claims a mouthpiece.  Because Fontem's
20   unsupported proposal of "a mouthpiece on the housing" covers any part of a
21   cigarette that touches the user's mouth, it reads out "mouthpiece" and "on the
22   housing" from the claims. Fontem's construction of "a mouthpiece on the housing"
23   has no basis in the intrinsic and extrinsic evidence. Indeed, nowhere in the
24   specification does the '331 patent teach that the housing itself can be the
25   mouthpiece.

26
27   ——————————————
28   [18] Ex. 10 (*Merriam-Webster's Collegiate Dictionary* 812 (11th ed. 2003) at "on.")

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

## F. "Inlet"

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|------|----------|---------------------|---------------------|
| "inlet" | '742 claims 1-2; '331 claims 1-5; '628 claims 1-5, 7, 8 | opening on the external wall of the housing for air intake | no construction necessary or, alternatively, an opening |

The dispute here is over the location of the "inlet." Based on the intrinsic evidence, the Defendants' propose that the "inlet" must be located on the external wall of housing. In contrast, Plaintiff's proposal allows the inlet to be anywhere on the electronic cigarette, inconsistent with the intrinsic evidence. Most of the Defendants' accused products do not have an opening on an external wall, so adopting Defendants' construction would provide them with non-infringement positions.

The intrinsic evidence compels a construction that "inlet" is an opening on the external wall of the housing for air intake. The specification, claims, and prosecution history all use "inlet" consistent with an opening on the external wall of the housing for air intake. The term "inlet" appears in the '742 patent (claims 1-2), the '331 patent (claims 1-2), and the '628 patent (claims 1-2, 7-8). The claims require that the claimed shell or housing itself have the inlet. (*See, e.g.*, '742 patent, claim 1 ("the shell **has** through-air-inlets" (emphasis added); *see, e.g., id.* at claim 2 ("with the housing **having** one or more through-air-inlets").)

The '742, '331, and '628 patent specifications all confirm that an "inlet" is an opening on the external wall of the housing for air intake. For example, the '331 patent uses "inlets" to refer to openings on the external wall of the housing: "The external wall of the shell has an air inlet." ('331 patent, Abstract.) Moreover, "[a]s shown in FIG. 1 [below], an air inlet **4** is provided on the external wall of the shell **14**." ('628 patent, 2:31-32; *see also* '331 patent, 2:33-34.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

25

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

*FIG. 1*

Because "inlet" is used throughout the specifications to describe an opening on the external wall of the housing for air intake this Court should adopt Defendants' construction.

In contrast, Fontem offers an unsupported construction of "inlet" that would cover any part of a cigarette. Fontem's proposal does not require that the **housing have** the inlet as required by the claims. (*See, e.g.,* '628 patent, claim 7 ("a housing **having an inlet**" (emphasis added).) The Court should reject Fontem's improper construction that departs from the meaning of that term as found in the claims and the specification.

**G. "A Liquid Permeating Component Sleeved on the Electric Heater"**

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|---|---|---|---|
| "a liquid permeating component sleeved on the electric heater" | '805 claim 2 | liquid permeating component fitted around and oriented in the same axial direction as the heater | no construction necessary or, alternatively, a liquid permeating component fitted around the electric heater |

The parties agree that a "liquid permeating component" is a component fitted around the electric heater. The parties only dispute whether the liquid permeating component and the heater are oriented in the same axial direction. This term needs construction because Plaintiffs asserts in its infringement contentions that the alleged "liquid permeating component" is sleeved on the heater despite the fact that these parts are not even aligned, i.e., oriented in the same direction.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

26

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    Specifically, in the accused products, the liquid permeating component runs

2    parallel to the housing and the electric heaters runs perpendicular to the housing.

3    Thus, the alleged liquid permeating component is not sleeved on the heater.

4    Defendants' construction merely clarifies that "fitted around" requires orientation

5    in the same axial direction to prevent Plaintiffs from confusing the issues.

6           Defendant's proposed construction is consistent with the common usage of

7    the term "sleeve."  For example, a record sleeve is designed to fit over a record and

8    a shirt sleeve is designed to fit over an arm.  Given that *sleeved* refers to a

9    designed, fitted relationship, it should not be controversial that a sleeve and a

10   sleeved object must be oriented in the same axial direction.  Indeed, attempting to

11   insert a record into a record sleeve or an arm into a shirt sleeve without first

12   aligning the sleeve and object to be sleeved would result in little success.

13   Furthermore, Plaintiffs' own cited dictionary supports Defendants' construction: a

14   "sleeve" is "a tubular part … **designed to fit over** another part."  Dkt. No. 34-2 at

15   5 (*Merriam Webster* at "sleeve"); *see also ProTec Inc. v. Life-Like Products Inc.*,

16   986 F. Supp. 27, 33 (D. Maine 1997) ("The Court gives the term 'sleeve' its

17   ordinary meaning, 'a tubular piece ... fitting over a rod or the like.'")

18          Consistent with the plain and ordinary meaning of "sleeve," the '805 Patent

19   shows the liquid permeating component 6 fitted around the electric heater 5 and

20   oriented in the same axial direction as the heater, i.e., they both run in parallel with

21   the housing of the electronic cigarette: [19]

22

23

24

---

25   [19] Defendants' construction for this term is also consistent with a means-plus-
     function analysis of the term because "liquid permeating" merely recites function;
26   "component" is a substitutes for "means"; and therefore this term is limited to
     corresponding structures disclosed in the specification.  *See* MPEP §2181 (I)(A);
27   *Welker Bearing*, 550 F.3d at 1096; *Robert Bosch*, 2014 WL 5137569, at *6-7.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

27

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1
2
3
4
5
6
7



8

The '805 Patent also discloses other *sleeved* relationships including a liquid

9

conduction component 7 *sleeved* on the liquid permeating component and a

10

fastening sleeve 12 *sleeved* on the liquid conduction component. ('805 patent,

11

3:17-27.)  As shown in Figure 4, all of these parts are aligned, i.e., oriented in the

12

same axial direction.  Furthermore, the fastening sleeve creates a mating

13

relationship between the sleeve and sleeved objects: "As shown in FIG. 1A, to

14

make the liquid conduction component 7 **mate with** the liquid permeating

15

component 6 **more tightly** to improve the liquid conductivity, a fastening sleeve

16

12 can be sleeved on the liquid conduction component 7."  (*Id.*, 3:24-27 (emphasis

17

added).)

18

If any of the components were not aligned, a fastening sleeve would simply

19

not function.  In sum, the plain and ordinary meaning of "sleeved" as well as the

20

use of "sleeved" in the specification requires that the liquid permeating component

21

is fitted around and oriented in the same axial direction as the heater.

22

**H.  "A Liquid Conduction Component in Contact with the Liquid**

23

**Permeating Component and the Liquid Storage Component"**

24

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|---|---|---|---|
| "a liquid conduction component in contact with the liquid permeating component and the liquid storage component" | '805 claim 3 | a component that transports liquid from the liquid storage component to the liquid permeating component | no construction necessary |

25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

28

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

Contrary to Plaintiffs' proposal, this term needs construction because "liquid conduction component" has a specific meaning in the '805 Patent. Defendants' proposal construes the term in view of the specification as a component that *transports* liquid from the liquid storage component to the liquid permeating component. Indeed, that is the stated function of the liquid conduction component in the specification. [20]

The specification refers to the "liquid conduction component" as a "*transportation component* in contact with the liquid permeating component and the liquid storage component." ('805 patent, 1:63-65.) "The liquid conduction or transportation component can be sleeved on the liquid permeating component, and includes a conduction part that extends from one end of the liquid conduction component in the radial direction to contact the liquid storage component." (*Id.*, Fig. 3; 2:1-3.) The liquid conduction component 7 with conduction part 71 is shown in FIG. 3. (*See also id.*, Fig. 1A.)



The liquid conduction component is in contact with the liquid storage component and the liquid permeating component because it acts as a *medium* for

---

[20] Defendants' constructions for this term is also consistent with a means-plus-function analysis of the term because "liquid conducting" merely recites function, "component" is a substitute for "means", and therefore the term is limited to corresponding structures disclosed in the specification. *see* MPEP §2181 (I)(A); *Welker Bearing*, 550 F.3d at 1096; *Robert Bosch*, 2014 WL 5137569, *6-7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

29

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

transporting liquid from the liquid storage component to the liquid permeating component: "[c]igarette liquid in the liquid storage component 3 is **conducted and permeated** to the liquid permeating component 6 **by the liquid conduction component** 7." (*Id.*, 4:33-36.)  This is consistent with the dictionary definition of conduct: "to act as a medium for conveying or transmitting."  Dkt. No. 34-2 at 5 (*Merriam Webster* at "conduct")

The transportation of liquid from the storage component to the permeating component is consistent with the function of the claimed device.  In order for liquid to be atomized by the electric heater, it must first be transported to the liquid permeating component.  This function can also be achieved without a liquid conduction component.  For example, in the embodiment shown in Figure 6 below, there is no liquid conduction component.   Instead, the liquid permeating component is sleeved in the channel and is thus "directly contacted" with the liquid storage component.  (*Id.*, 5:4-8.)



Because the contact between the liquid storage component and liquid permeating provides for "permeation and conduction of cigarette liquid" that is "sufficient and rapid," this embodiment does not include a liquid conduction component, i.e., a medium for transporting liquid between those two parts.

Similarly, in the accused products, the alleged liquid storage component is in direct contact with the alleged liquid permeating component, and thus there is no need for an extra component to transport liquid from the storage component to the permeating component.  Thus, there is no liquid conduction component.  Nevertheless, Plaintiffs point to a bundle of glass fibers around which the heater is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

30

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1   wrapped as being the "liquid conduction component."  This makes little sense.

2        Defendants' proposed construction is consistent with the function of the

3   liquid conduction component and should therefore be adopted.

4        **I.  "Projecting Into" / "Extending Into"**

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|---|---|---|---|
| "projecting into" | '628 claims 1, 6 | having only a portion that protrudes into | no construction necessary |
| "extending into" | '628 claims 7, 8 | having only a portion that protrudes into | no construction necessary |

11       In the '628 patent, the disputed term "projecting into" appears in claim 1 ("a

12  porous body **projecting into** the liquid supply") and claim 6 ("the porous body of

13  atomizer **projecting into** the liquid supply comprising a porous bulge section").

14  The related disputed term "extending into" appears in claims 7 and 8 ("a porous

15  body **extending into** the liquid supply").  Consistent with the intrinsic evidence

16  and the ordinary meaning of these terms, Defendants propose that these related

17  claim terms both be construed to mean "having only a portion that protrudes into."

18  Although Plaintiffs have offered no competing construction for these terms, they

19  are interpreting these terms to allow for the porous body to be completely

20  surrounded by the liquid supply based on the infringement contentions.  If the

21  Court adopts the Defendants' construction then many of the accused products will

22  not infringe the above claims of the '628 patent.

23       The '628 patent specification describes embodiments where a portion of the

24  atomizer's porous body protrudes into the liquid supply but never describes a

25  porous body of the atomizer completely surrounded by the liquid supply.  For

26  example, as explained in the specification, and shown in Figure 6, the porous

27  material forming the "porous body 27" of the atomizer has a "bulge 36."

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

31

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1

2

3

4

5

6

7

8



9      The bulge is the portion of the porous body that is in contact with the liquid-

10 supplying bottle.  ('628 patent, 2:43-44 ("The atomizer 9 is in contact with the

11 liquid-supplying bottle 11 via the bulge 36."); 3:60-63 ("The solution storage

12 porous body 28 in the liquid-supplying bottle 11 is in contact with the bulge 36 on

13 the atomizer 9 ….").)  As shown in the figures, such as Figure 1 below, this bulge

14 also protrudes into the liquid supply.

15

16

17

18 

19

20

21

22      Consistent with the specification, both "projecting into" and "extending

23 into" are used to describe how the porous body of the atomizer has a portion that

24 protrudes into the liquid supply.  (*See, e.g.*, *id.*, claim 6 (further reciting that the

25 porous body "projecting into" the liquid supply is a "porous bulge section").)  This

26 understanding is also consistent with the plain and ordinary meaning of these

27 terms.  *See, e.g.*, *Alloc, Inc. v. Pergo, LLC*, 2009 WL 1939034, at *39 (E.D. Wis.

28 July 2, 2009) (construing "projecting" as "protruding" in accordance with its plain

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

32

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    and ordinary meaning).  All of the intrinsic and extrinsic evidence supports

2    Defendants' construction of these terms.  It should be adopted.

3        **J.  "Substantially"**

| Term | Claim(s) | Defendants' Proposal | Plaintiffs' Proposal |
|------|----------|----------------------|----------------------|
| "substantially" | '742 claims 1, 2 | largely but not completely | no construction necessary or, alternatively, at least largely |

9        In the '742 patent, the parties dispute the construction of the term

10   "substantially" within the context of claim phrases "the porous component also

11   positioned **substantially** within the cigarette bottle assembly" of claim 1 and "the

12   porous component **substantially** surrounded by the liquid storage component" of

13   claim 2.  The dispute is over whether the porous component, a part of the atomizer

14   assembly, is (1) "largely but not completely" within the liquid storage component

15   (Defendants' position) or (2) "at least largely" within the liquid storage component

16   (Plaintiffs' position).  Plaintiffs' constructions would allow the porous component

17   to be completely within or surrounded by the liquid storage component while

18   Defendants' construction, consistent with all of the intrinsic evidence, would not

19   allow this.  In many of the accused products, what the Plaintiffs point to as the

20   porous component of the atomizer is completely within or surrounded by what

21   Plaintiffs argue is the liquid storage component.  Adopting Defendants'

22   construction would provide a non-infringement defense for many of the accused

23   products.

24       The '742 patent never describes a porous component of an atomizer

25   assembly that is completely within or surrounded by a liquid storage component.

26   Instead, some embodiments describe the porous component of the atomizer as

27   being adjacent to the liquid storage component:  "one end of the porous component

28   (81) lies against one end surface of the perforated component for liquid storage."

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

33

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1   ('742 patent, 3:63-67; *see also* 5:49-50 ("One end of the porous component (81)

2   fits with the cigarette  bottle assembly").)  Other embodiments, as shown below,

3   describe the porous component as partially protruding into the liquid storage: "the

4   porous component (81) has a protuberance (812) on the other end, and the

5   protuberance (812) fits with the cigarette bottle assembly."  (*Id.*, 3:16-19.)

6          Consistent with the intrinsic evidence, the claims must use the term

7   "substantially" to specify that the porous component is "largely, but not

8   completely" within or surrounded by the liquid storage component.  When

9   supported by the intrinsic evidence, Courts have similarly construed

10   "substantially" to mean less than completely.  *See, e.g.*, *Ecolab, Inc. v.*

11   *Environchem, Inc.*, 264 F.3d 1358, 1369 (Fed. Cir. 2001) (construing "substantially

12   uniform" alkaline to mean "largely, but not wholly the same in form" (internal

13   quotations omitted)).  Because Plaintiffs' construction would stretch claim 1 and 2

14   to cover embodiments nowhere described in the specification in which the porous

15   component completely within or surrounded by the liquid storage component, it

16   should be rejected.

## II. CONCLUSION

18          For the foregoing reasons, Defendants respectfully request the Court to

19   adopt their proposed constructions.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

34

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    Dated:  November 3, 2014          MORRISON AND FOERSTER LLP

2
                                       By: /s/ Nicole M. Smith
3
                                           Nicole M. Smith
4                                          nsmith@mofo.com
                                           Alex S. Yap
5                                          ayap@mofo.com
                                           Dylan J. Raife
6                                          draife@mofo.com
                                           707 Wilshire Boulevard, Suite 6000
7                                          Los Angeles, CA  90017-3543
                                           Tel:     (213) 892-5200
8                                          Fax:     (213) 892-5454

9                                          *Attorneys for Defendants*
                                           *CB Distributors, Inc. and DR*
10                                         *Distributors, LLC dba 21ST Century*
                                           *Smoke, LLC*
11

12   Dated:  November 3, 2014          LATHAM & WATKINS LLP

13
                                       By: /s/ Ryan R. Owens
14
                                           Perry J. Viscounty
15                                         perry.viscounty@lw.com
                                           Ryan R. Owens
16                                         ryan.owens@lw.com
                                           Gunnar B. Gundersen
17                                         Gunnar.gundersen@lw.com
                                           650 Town Center Drive, 20th Floor
18                                         Costa Mesa, California  92626-1925
                                           (714) 540-1235 / (714) 755-8290 Fax
19
                                           *Attorneys for Defendant NJOY, Inc.*
20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

35

CASE NO.
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1
2

Dated:  November 3, 2014

WALLER LANDSEN DORTCH and DAVIS

3

By: */s/ Heather J. Hubbard*

4
5
6
7

Heather J. Hubbard
*heather.hubbard@wallerlaw.com*
Laura P. Merritt
*laura.merritt@wallerlaw.com*
511 Union Street, Suite 2700
Nashville, TN 37219-8966
(615) 244-6380/ (615) 244-6804 (Fax)

8
9

*Attorneys for Defendants FIN Branding Group, LLC and Victory Electronic Cigarettes Corporation*

10
11

Dated:  November 3, 2014

STEPHENS FRIEDLAND LLP

12

By: */s/ John B. Stephens*

13
14
15

John B. Stephens
*john@sf-lawyers.com*
4695 MacArthur Court, Suite 1550
Newport Beach, CA 92660
(949) 468-3200/(949) 468-3201 (Fax)

16
17

*Attorneys for Defendants FIN Branding Group, LLC and Victory Electronic Cigarettes Corporation*

18
19

Dated:  November 3, 2014

CHRISTIE PARKER and HALE LLP

20

By: */s/ David A. Dillard*

21
22
23
24

David A. Dillard
*david.dillart@cph.com*
Katherine L. Quigley
*katherine.quigley@cph.com*
655 North Central Ave., Suite 2300
P.O. Box 29001
Glendale, CA 91209
(626) 795-9900/(626) 577-8800 (Fax)

25
26

*Attorneys for Defendant Ballantyne Brands, LLC*

27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

36

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    Dated:  November 3, 2014          FOLEY AND LARDNER LLP

2

3                                      By: */s/ Victor de Gyarfas*

4                                          Victor de Gyarfas
                                           *vdegyarfas@foley.com*
5                                          555 South Flower St., Suite 3500
                                           Los Angeles, CA 90071
6                                          (213) 972-4500/(213) 486-0065 (Fax)

7                                          *Attorneys for Defendant Logic*
                                           *Technology Development LLC*

8
     Dated:  November 3, 2014          DYKEMA GOSSETT PLLC
9

10                                     By: */s/ Alan Gabriel*

11                                         Alan Gabriel
                                           *agabriel@dykema.com*
12                                         Walead Esmail
                                           *wesmail@dykema.com*
13                                         333 S. Grand Ave., Suite 2100
                                           Los Angeles, CA 90071
14                                         (213) 457-1800/  (213) 457-1850 (Fax)

15                                         Aaron Charfoos *(pro hac vice)*
                                           *acharfoos@dykema.com*
16                                         Steven McMahon Zeller *(pro hac vice)*
                                           *szeller@dykema.com*
17                                         Jonathan E. Giroux *(pro hac vice)*
                                           *jgiroux@dykema.com*
18                                         10 South Wacker Drive, Suite 2300
                                           Chicago, IL 60606
19                                         (312) 876-1700/(312) 1155 (Fax)

20                                         *Attorneys for Defendant LOEC, Inc.*

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

37

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1    Dated:  November 3, 2014          FELDMAN GALE PA

2
                                       By: */s/ Javier Sobrado*
3
                                           Todd M. Malynn
4                                          *tmalynn@feldmangale.com*
                                           880 West First Street, Suite 315
5                                          Los Angeles, CA 90012
                                           (213) 625-5005/(213) 625-5993 (Fax)
6
                                           Gregory L. Hillyer *(pro hac vice)*
7                                          *ghillyer@feldmangale.com*
                                           1700 Market Street, Suite 3130
8                                          Philadelphia, PA 19103
                                           (267) 414-1300/(267) 567-2648 (Fax)
9
                                           Javier Sobrado *(pro hac vice)*
10                                         *jsobrado@feldmangale.com*
                                           2 South Biscayne Blvd., Suite 3000
11                                         Miami, FL 33131-1802
                                           (305) 358-5001/(305) 358-3309 (Fax)
12

13                                         *Attorneys for Defendant VMR*
                                           *Products, Inc.*
14

15   Dated:  November 3, 2014          KELLY LOWRY AND KELLEY LLP

16
                                       By: */s/ Michael A. DiNardo*
17
                                           Michael A. DiNardo
18                                         *mike@kelly-kelleylaw.com*
                                           6320 Canoga Ave., Suite 1650
19                                         Woodland Hills, CA  91367
                                           (818) 347-7900 / (818) 340-2859 (Fax)
20
                                           *Attorneys for Defendant Spark*
21                                         *Industries, LLC*

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

38

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF

1

Dated:  November 3, 2014          SQUIRE PATTON BOGGS US LLP

2

3                                                By: */s/ David S. Elkins*
                                                    David S. Elkins
4                                                   *david.elkins@squirepb.com*
                                                    600 Hansen Way
5                                                   Palo Alto, CA  94304-1043
                                                    (650) 856-6500 / (650) 843-8777 (Fax)
6
                                                    Adam R. Fox
7                                                   *adam.fox@squirepb.com*
                                                    555 South Flower Street, 31st Floor
8                                                   Los Angeles, CA  90071-2300
                                                    (213) 624-2500 / (213) 623-4581 (Fax)
9
                                                    Richard J. Oparil (pro hac vice)
10                                                  *richard.oparil@squirepb.com*
                                                    2550 M Street NW
11                                                  Washington, DC  20037
                                                    (202) 457-6496 / (202) 457-6315 (Fax)
12
                                                    *Attorneys for Defendant Vapor Corp.*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

39

CASE NO. CV 14-01645 GW (MRW)
DEFENDANTS' OPENING CLAIM
CONSTRUCTIONS BRIEF